LIZZIE BROWN, Respondent, v. JOHN H. KOF-FLER et ux., Appellants.

Kansas City Court of Appeals, October 15, 1908.

CHATTEL MORTGAGE: Release: Payment: Law: Equity. An action on a note and to foreclose a chattel mortgage securing the same is a proceeding at law and a satisfaction of the mortgage only makes a prima-facie case of payment which may be overcome by evidence; and it is not necessary to have the release of record set aside by a suit in equity.

Appeal from Jackson Circuit Court.—*Hon. Thomas H. Reynolds,* Special Judge.

AFFIRMED.

*Metcalf, Brady & Sherman* for appellants.

(1) The court erred in permitting the plaintiff to introduce in evidence over the objection of the defendants a copy of the chattel mortgage and in overruling the defendant's motion to strike such evidence from the record. The mortgage had been released of record and satisfaction acknowledged as provided for by statute. (2) This release and satisfaction of the mortgage is of such a nature that it would first have to be set aside by a court of equity before the instrument so satisfied and extinguished could be recovered upon in a court of law. (3) To permit the plaintiff to submit to the jury the question of fraud in making the marginal release and satisfaction of the mortgage would be presenting an issue not tendered by the pleadings. R. S. 1899, sec. 4358. (4) Quasi-judicial functions are those which lie midway between the judicial and the ministerial ones. The lines separating them from such as are on their two sides are necessarily indistinct; but in general terms when the law in words or by implication, commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial. Bishop on Non-Contract Law, secs. 785-6; Mechem on Public Officers, secs. 618, 637; Throop on Public Officers, sec. 533; McCree v. Purmont, 15 Wend. 474; Chappell v. Allen, 38 Mo. 223; Cardwell v. Stuart, 92 Mo. App. 586; Martin v. Turnbaugh, 153 Mo. 172.

*Laughlin & Kenworthy* for respondent.

(1) That this proceeding for the foreclosure of the mortgage is one at law is well settled. Carr v. Holbrook, 1 Mo. 240; Thayer v. Campbell, 9 Mo. 280; Riley's Adm'r v. McCord's Adm'r, 24 Mo. 265; Fithian v.

Monks, 43 Mo. 502; State ex rel. v. Evans, 176 Mo. 310; Rubey v. Coal & Mining Co., 21 Mo. App. 159. (2) It was incumbent upon defendant to prove that Anna Koffler was the owner and holder of the note at the time of the alleged payment. There is no question of fraud in this case. If the testimony of the plaintiff is to be believed, Anna Koffler had no more claim to the ownership of the note than if she had stolen it. The note was left with her for safe keeping. (3) Even if defendants had made the payment in good faith to Anna Koffler, it would be no defense if she obtained title to the note by a forged endorsement. Luther v. Clay, 100 Ga. 95. (4) Appellant is in error in claiming that there is any issue of fraud in this case, and is also in error in claiming, that were such an issue in the case, it could not be raised and determined in this action without resorting to an equitable suit to set aside the cancellation. The law in this state is well settled to the contrary. Valles v. Mountain Co., 27 Mo. 460; Seiberling Miller & Co. v. Tipton, 113 Mo. 373, 379; Joerdens v. Schrimpf, 77 Mo. 385; Lanier v. McIntosh, 117 Mo. 517; Sells v. Tootle, 160 Mo. 606; White v. Stevenson, 144 Cal. 104, 77 Pac. 512; Chappell v. Allen, 38 Mo. 213.

JOHNSON, J.—Action for personal judgment against defendants on a negotiable promissory note and to foreclose a chattel mortgage to secure the payment of the same. Defendants, in their answer, admit the execution of the note and mortgage as alleged in the petition and plead that "they in good faith and for full consideration paid said note at maturity thereof, to Anna Koffler, the then owner and holder of said note and that by reason thereof, the said note is fully paid and satisfied and is now in the possession of these defendants; and that the mortgage securing said note was satisfied of record by Anna Koffler the then owner and

holder of said note at the time of the payment as afore-
said."

The reply filed by plaintiff is a general denial. The
trial was to a jury and the evidence introduced by plain-
tiff discloses the following state of facts: Plaintiff
is a sister of defendant, John Koffler, and Anna Kof-
fler is their mother. Defendants, husband and wife,
borrowed $400 of plaintiff on September 23, 1901, and
gave her their negotiable promissory note for that
amount due on the 12th day of March, 1903, with inter-
est from date at six per cent per annum, payable semi-
annually. To secure the payment of the note, defend-
ants, on the same day, executed, acknowledged and
delivered to plaintiff a chattel mortgage on a stock of
groceries, store fixtures, horse and wagon, owned by
them in Kansas City and two days later, plaintiff filed
the mortgage in the office of the recorder of deeds of
Jackson county. It was released of record March 26,
1903, by Anna Koffler, who had possession of the note
and mortgage at that time. In March or April, 1902,
plaintiff turned her valuable papers, including this note
and mortgage over to her mother for safe keeping. She
gave her mother no authority to collect either principal
or interest and at different times, when interest ma-
tured, asked her brother for payment but was put off by
him with promises that he would pay when his pecuniary
situation improved. In March, 1903, plaintiff, who was
a widow, intermarried with Roy Brown in opposition to
the wishes of her mother who shortly after this event
released the mortgage of record and then delivered the
note and mortgage to defendant, John. Sometime after
their marriage, plaintiff and her husband went to New
Mexico, where they remained until the spring of 1904,
when they returned to Kansas City. Plaintiff first re-
ceived information of what her mother had done with
her note and mortgage after her return to Kansas City.

The note, when produced at the trial, bore the endorsement "Pay to the order of Anna Koffler" with the name of plaintiff written underneath, but plaintiff denounces this endorsement as a forgery. She has not received payment of any part of the note, either principal or interest, and did not authorize her mother to release the mortgage, to surrender the papers to defendants, or to do anything with them except to keep them safely.

Defendant John testified that his mother gave him the note and mortgage in payment of groceries and money he had given her during the preceding five years. In this statement he was corroborated by his mother who explains her action in giving her daughter's note in payment of her own debt by saying that plaintiff owed her more than the amount of the note for a boarding house she sold plaintiff and for caring for plaintiff during sickness. Mother and son both declare that plaintiff endorsed the note at the time she delivered it to the mother. The testimony of both relative to the alleged payment of the note is so vague, indefinite and improbable that we would have sustained the trial judge had he rejected it entirely as being too weak to raise an issue of fact. The mainspring of the mother's conduct is laid bare in her own testimony, from which we quote:

"Q. Now, I will ask you what, if any, transaction has taken place between you and John with reference to this note? A. *Well, when I told her I was going to do that if she got married again.* Q. Well, what transaction, if any, took place between you and John with reference to the note? A. When he came over one time, I told him, says I, 'John now you have helped me along with groceries; you have given me groceries, and you have got to help me yet; I will give you the note. . . . Q. What did John Koffler give you for this note, if anything? A. He gave me groceries and money. Q. About how much? A. I can't exactly tell you, but I

told him I was satisfied. . . . Q. Now, how did it come that you got that note? A. I don't know. Q. Didn't she just leave it there with her other papers? A. No, sir, she gave me the note all alone. Q. She gave you the note all alone? A. Yes, sir, she did. Q. As a matter of fact, didn't she leave it there at the house in a prayer book? A. No, sir, she didn't. Q. She didn't? A. No, sir, she didn't leave it at the house in a prayer book; she never has a prayer book. . . . Q. How did it get down there? A. She had it. Q. I thought you said you had it. A. She had it before she gave it to me, didn't she? Q. When was that? A. I don't remember the time, sir. Q. You don't remember when that was? A. No, sir. Q. Now, after you got it, what did you do with it? A. I kept it a long time. . . . Q. How much did she owe you for selling out? A. $125. Q. She owed you $125 for selling out what? A. Boarding house to her. Q. Where? A. In Argentine. Q. And then she owed you four or five hundred dollars for sickness? A. Yes, sir. Q. Now, which was it, four or five hundred? A. I didn't pay any attention; I paid all the bills for her. Q. Paid all the bills for her? A. Yes, sir; when she laid sick three or four months with her young one with her; I took care of it, too; I was poor and had to work for my living. Q. Didn't she send the boy up to Bill's for groceries? A. That was later on; that was after she was cured up some; this was when she ran away from home and married a man that was no man. Q. That you didn't want her to marry? A. No, I didn't; then when he had her in a pickle he left her on my hands."

The court overruled the demurrer to the evidence presented by defendants and at their request gave the following instructions:

"You are instructed that if you believe from the evidence that the plaintiff, before maturity, indorsed the

note in question and delivered the same to a third person, and that thereafter and at maturity the defendants in good faith and for value received obtained a transfer of said note from such third person, then your verdict must be for the defendants and you are further instructed that 'for value' does not necessarily mean the full face value, but the passing of some valuable consideration from the defendants or either of them to the holder of the note at maturity.

"You are instructed that if you believe from the evidence that the words 'Lizzie Rolls' on the back of the note in evidence, were written by the plaintiff and the note thereafter was delivered by plaintiff to Anna Koffler, then your verdict must be for the defendants.

"You are instructed that the fact that the defendants have the note in their possession is prima-facie evidence that they have paid the same and the burden of proof rests upon the plaintiff to overcome this presumption by a preponderance of the evidence and by the preponderance of the evidence is meant the greater weight of the credible testimony in the case."

Verdict and judgment were for plaintiff in accordance with the prayer of the petition and the cause is here on the appeal of defendants.

Although we believe the evidence shows conclusively that defendants paid nothing for the surrender of the note and the release of the mortgage and that they did not act in good faith but accepted the pretended satisfaction of the indebtedness knowing that the custodian of the securities was acting without authority and from the wrongful motive of inflicting punishment on her daughter for marrying against her wishes, we shall consider the case from the standpoint assumed by the trial court, that the evidence of defendants possessed sufficient probative strength to justify the submission to the jury of the issues presented in the instructions given.

The principal contention of defendants is that the

court erred in admitting the chattel mortgage in evidence over their objection, and in refusing to give a peremptory instruction to the jury to return a verdict in their favor. The ground of this contention is that since the release of the mortgage by the recorder of deeds should be regarded as a "quasi-judicial act" of a public officer, the mortgage could not be foreclosed in an action at law until after the release had been set aside in a proceeding in equity. That the action is one at law for the foreclosure of the mortgage is a proposition conceded by plaintiff and abundantly supported by the adjudicated cases. [Carr v. Holbrook, 1 Mo. 240; Thayer v. Campbell, 9 Mo. 280; Riley's Admr. v. M'Cord's Admr., 24 Mo. 265; Fithian v. Monks, 43 Mo. 502; State ex rel. v. Evans, 176 Mo. 310; Rubey v. Coal Mining Co., 21 Mo. App. 159.] The petition does not seek a cancellation of the release nor was the obtaining of such release necessary to the prosecution of the suit. Aside from giving notice and in contests between mortgagor and mortgagee, the statutory entry of satisfaction of a mortgage or deed of trust has no greater force or effect than a receipt acknowledging payment of the debt. It is prima-facie evidence of payment but, like a receipt, is open to explanation and its effect may be overcome by oral evidence showing that, in fact, no payment was made. A direct proceeding to impeach such entry is not required. [Valle's Admr. v. American Iron Mountain Co., 27 Mo. 455; Seiberling v. Tipton, 113 Mo. 373; Joerdens v. Schrimpf, 77 Mo. 383; Lanier v. McIntosh, 117 Mo. 508; Sells v. Tootle, 160 Mo. 606; Luther v. Clay, 28 S. E. 46.] In attacking by parol evidence the verity of the release, plaintiff did not enlarge the scope of the cause of action pleaded. She was entitled to meet the prima-facie evidence of payment offered by the release by evidence to the effect that no such payment was made to her nor to one authorized to receive it as her agent and that the release was entered by her

mother without authority. This assignment of error must be ruled against the contention of defendants.

Objections are made to other rulings of the trial court on the admission of evidence, but obviously, they are entirely devoid of merit and need not be noticed here.

The judgment is affirmed. All concur.