No. 19,433.

W. H. CORNWELL, *Appellee,* v. W. W. MOSS, as Sheriff, etc., et al., *Appellants.*

SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGE—*Extension—New Mortgage Taken—Release of Old Mortgage—Ignorance of Intervening Lien—Lien of First Mortgage Restored.* Where the holder of a chattel mortgage, having no knowledge of any intervening change in the title, lends to the mortgagor an additional sum, taking a new mortgage for the total amount on the same and other property, and releasing the first mortgage on the record, he is not thereby necessarily precluded from relying upon the lien of the first mortgage, as against one who purchased an interest in the property from the mortgagor while the first mortgage was of record and unreleased.

2. NEW TRIAL—*When Unnecessary to Present Excluded Evidence.* The requirement of the statute that where a new trial is asked on account of the exclusion of evidence the excluded evidence shall be produced at the hearing of the motion does not apply where the evidence in question had at one time been allowed to go before the jury, and was afterward withdrawn from their consideration.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed April 10, 1915. Reversed.

*C. A. Leland, K. M. Geddes,* and *Ralph B. Ralston,* all of El Dorado, for the appellants.

*A. L. L. Hamilton, B. R. Leydig,* both of El Dorado, and *L. C. Gabbert,* of St. Joseph, Mo., for the appellee.

The opinion of the court was delivered by

MASON, J.: W. H. Cornwell brought replevin against the Farmers & Merchants National Bank of El Dorado and others for the recovery of live stock which they had taken from his possession under color of a chattel mortgage given to the bank by C. C. Phillips. The jury found that the plaintiff owned a half interest in the property, and a judgment was rendered accordingly, from which the defendants appeal.

Evidence introduced by the plaintiff, Cornwell, tended to show these facts: In 1910 Cornwell occupied a farm owned by Phillips under an arrangement between them for its operation on shares, one feature of their agreement being that the live stock and other personal property used on the place (a part of which was furnished by each) was to be owned by them jointly. On March 14, 1911, Phillips sold the farm and his half interest in the personal property to G. I. Gann, who arranged with Cornwell that the business should be carried on under the same plan as that adopted by Phillips and Cornwell. In February, 1912, the personal property was divided, Cornwell paying Gann $400 and retaining all the property except four mules, two of which he afterwards bought back. In May, 1912, representatives of the bank took most of the live stock on the place, claiming it under a chattel mortgage for $884.25 executed by Phillips on March 29, 1911.

The plaintiff brought this action to recover the property taken by the bank, contending, as indicated by the foregoing statement, that he was the owner of a half interest by virtue of his original agreement with Phillips, and had acquired the other half interest from Gann, who had bought it from Phillips before the chattel mortgage was executed. The defendants maintain that the agreement between Phillips and Cornwell was, in fact, that Cornwell was to receive half of the proceeds of the place, but that Phillips was the sole owner

of the stock; and they also attack the good faith of the transfers from Phillips to Gann and from Gann to Cornwell. The jury may have found that Cornwell originally owned half of the stock, but have discredited his story as to acquiring the other half through Gann; or they may have found that originally he had no title, but that he acquired from Gann a half interest which Gann had purchased from Phillips.

The defendants assert that the evidence conclusively showed that the agreement between Phillips and Cornwell was that Cornwell was to have an interest only in the proceeds of the business. There was testimony to that effect. Indeed, Cornwell himself so described the arrangement in one part of his testimony. But at another time he said in describing the agreement made between them with regard to the property placed on the farm: "We were each to own it as a partner, each one of us to own a half interest in the property." The conclusion to be drawn from his different statements was for the jury. (*Acker v. Norman*, 72 Kan. 586, 84 Pac. 531.)

The amount allowed by the jury and confirmed by the court as the value of the use of the property for the time (574 days) during which the plaintiff was wrongfully deprived of its possession exceeds that fixed as the value of the property. The defendants insist that this is manifestly excessive. Where the property detained has a usable value in excess of the legal rate of interest, that is the ordinary measure of damages for the wrongful detention of personal property (34 Cyc. 1562), and this rule has been applied even where the amount allowed for its use for a short time has greatly exceeded the value of the property itself (*Yandle v. Kingsbury*, 17 Kan. 195).

The cashier testified that on September 30, 1910, the bank made a loan to Phillips of $600, due March 30, 1911, for which he gave a chattel mortgage on four mules; that on November 7, 1911, a further loan of

$260 was made to him on his unsecured note; that the note secured by the chattel mortgage for $884.25 was given in renewal of the two earlier notes, the new mortgage being made to cover the same four mules and additional property. Two of the mules included in the first mortgage were a part of the property for which the plaintiff brought replevin. When the later mortgage was given the cashier attached a slip to the earlier one, acknowledging its payment and directing the register of deeds to satisfy it on the record. The satisfaction was entered of record on April 6, 1911, the new mortgage being recorded at the same time. The defendants introduced this earlier mortgage in evidence, but the court afterward struck it out, together with the testimony relating to it, on the ground that they could not take advantage of it in the present action. This ruling is complained of, the defendants maintaining that as the first mortgage indebtedness was never in fact paid, the later mortgage, to the extent that it covered the same property and debt, is to be regarded as a renewal, which preserved the original lien as against Phillips, the mortgagor, and also against Gann, who bought from Phillips while the first mortgage was still of record, and against Cornwell, who bought from Gann after the release had been entered, but after the new mortgage had been recorded. If the ruling was erroneous the error was material if the jury found (as they may have done) that the only interest Cornwell had in the property was what he acquired from Gann.

In *Packard v. Kingman, et al.*, 11 Iowa, 219, it was held that "the taking of a new note and mortgage on personal property to secure an indebtedness already evidenced by a note and secured by a mortgage on the same property, does not, even where the first note and mortgage are cancelled operate to discharge the lien of such first mortgage." (Syl. ¶ 2.) And this is doubtless the general rule. In the case cited it was inti-

mated that an "express release" would effect a discharge (p. 225), and the same court later so decided with regard to a real-estate mortgage. (*Sioux City E. S. Co. v. S. C. & L. E. Ry. Co.,* 106 Iowa, 573, 76 N. W. 838. See, also, Jones on Chattel Mortgages, §§ 644, 645; Note, 52 Am. Dec. 693.) It is said that where a new real-estate mortgage is substituted for an earlier one, which is released in ignorance of the fact that an intervening lien has been given, equity will set aside the release as a mistake, preserving the original lien against the intervening one. (1 Jones on Mortgages, § 971; see, also, § 927*a*.) The release of an old mortgage at the time of the execution of a new one is held not to give priority to an intervening lien where the new security is defective. (*Russell v. Bosworth,* 106 Ill. App. 314.) And the same principle might seem to apply where the mortgagor had parted with his title before making the new mortgage. The discharge of a mortgage on the record obtained by fraud may be set aside where this can be done without injury to any who have acquired rights in reliance upon it. (27 Cyc. 1432; 7 Cyc. 75.) And such a discharge may be disregarded in an action at law without the institution of an equitable proceeding to set it aside. (*Brown v. Koffler,* 133 Mo. App. 494, 501, 113 S. W. 711. See, also, *White v. Stevenson,* 144 Cal. 104, 77 Pac. 828; *Saint, appellant, v. Cornwall,* 207 Pa. St. 270, 56 Atl. 440.) And a mortgage released through mistake will be reinstated where rights have not accrued upon the strength of the release. (*Bessette v. Dennis,* ante, p. 119; 27 Cyc. 1433, 1434; Note, 26 L. R. A., n. s., 816; Note, 58 L. R. A. 788.)

In the note last cited it is said:

"Ignorance of the fact that there is an intervening mortgage or deed of the premises is usually sufficient ground in equity to have a release of a prior mortgage set aside, where the intention is simply to extend the

time, but not to release the lien. In such cases ignorance is held to be the same as mistake. . . . One of the most common mistakes connected with releases of mortgage is where the mortgage is renewed and the prior lien released in ignorance of an intervening judgment, attachment, mortgage lien, or other conveyance. Ignorance in such a case is regarded in equity as equivalent to a mistake, and relief will be granted where there is no other element of estoppel." (pp. 796, 807.)

In *Christy v. Scott,* 31 Mo. App. 331, the holder of a chattel mortgage, given as a substitute for an earlier one which he had released of record, was allowed to recover in replevin against an intervening mortgagee, the court saying: "The rule is well settled that, as against a party who has acquired no intermediate right upon the faith of the satisfaction of the first mortgage, courts of equity will restore the first mortgage, even after an entry of satisfaction." (p. 337.) In a recent case, where one having a mortgage on some cotton canceled it on the record and accepted in its place a pledge of warehouseman's receipts for the same property, it was held that he thereby subordinated his claim to that of an intervening mortgage of which he knew at the time. (*Farkas v. Third National Bank,* 133 Ga. 755, 66 S. E. 926, 26 L. R. A., n. s., 496.) Some stress was there laid on the fact that the form of the security was changed, but notwithstanding this the court added: "If the first mortgagee had accepted the pledge of the cotton and surrendered his mortgage for cancellation in ignorance of the intervening lien, equity, in the absence of laches or other disqualifying fact, would restore him to his original position." (p. 758.)

One who acquires an interest in personal property covered by a mortgage which is properly recorded can derive no advantage from the failure of the motgagee to renew the record by affidavit within the required time. (Note, 47 L. R. A., n. s., 668.) The situation here is quite similar. Under the statute (Gen. Stat.

Cornwell v. Moss.

1909, § 5226) the failure to file the renewal affidavit, so far as innocent purchasers are concerned, amounts to a cancellation of the mortgage—it makes it void as to them. Assuming the defendants' evidence to be true, it is obvious that the bank, when it took the new mortgage, knew nothing of the sale of a half interest in the property by Phillips to Gann, and the release was the result of a fraud practiced upon it. So there is no difficulty on that theory in regarding the first mortgage as still in existence as between Phillips and the bank. If Gann gained any higher right than Phillips it was in virtue of the condition of the record, and the record is for the protection of "subsequent purchasers and mortgagees in good faith." (Gen. Stat. 1909, § 5224.) Gann was not a purchaser subsequent to the entry of the release. When he bought the mortgage was properly of record. He expended nothing on the strength of the release, and if it became effective as to him he gained an advantage for which he made no compensation whatever—he became the beneficiary of a deception practiced upon the bank. Phillips never, in fact, held a clear title to the property after he gave the first mortgage. His original indebtedness was never paid, and there was no interval between the first and second mortgage during which the intervening claim could attach. Any priority that Gann acquired must have been due to the recording act, and that is for the benefit of subsequent purchasers in good faith. Of course, if he had relied on the release, or had been in any way misled by it to his prejudice, an entirely different question would be presented. We think the first mortgage, with the testimony regarding it, should have been allowed to go to the jury upon the issue whether Gann held title to the two mules in subjection to the bank's first mortgage. According to Cornwell's testimony he purchased a half interest in the property from Gann after the release of the first

mortgage had been filed. At that time, however, the later mortgage was properly of record, and it can not be said that it was conclusively shown that Cornwell was a purchaser in good faith without notice of the real facts regarding the two mortgages.

The plaintiff objects to the consideration of the matter just discussed on the ground that the motion for a new trial was not based on error in striking out evidence. The motion alleged "error of the court in refusing to allow the introduction of competent evidence offered by the defendant." We regard this as sufficient to cover the ruling in striking out the evidence after it had been once admitted. A further contention is made that the ruling is not subject to review because at the hearing of the motion for a new trial the excluded evidence was not produced. The purpose of the requirement that where the exclusion of evidence is relied upon as a ground for a new trial the evidence must be produced at the hearing (Civ. Code, § 307) is obviously that the court may be advised as to what the party complaining could have shown regarding the matter to which it related if he had been given the opportunity. Here the evidence in question had all been at one time before the jury, the principal item being the mortgage itself, and the court necessarily had all the information needed in that respect.

The error referred to affects only two of the animals in controversy, but it is impossible to separate the issues, as no special findings were made. A new trial will therefore be necessary.

The plaintiff objects to being taxed with the costs of the abstract in any event on the ground that it is unnecessarily prolix. The criticism is regarded as to some extent well founded. The abstract appears to contain substantially a full transcript of the evidence, a part of which might well have been omitted altogether, and a part of which might with advantage have

been greatly condensed. The defendant will on this account be allowed to recover but 50 per cent of the amount paid for printing the abstract.

The judgment is reversed, and the cause remanded for a new trial.