256 A.2d 514.

SOUTH COUNTY SAND & GRAVEL CO., INC. *vs.* BITUMINOUS PAVERS CO.

AUGUST 12, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a receivership proceeding and is before us on the appeal of the Rhode Island Hospital Trust Company from a judgment which in effect held that the bank is an unsecured rather than a secured creditor of the respondent.

The facts are not in dispute. On December 5, 1966, the bank executed an agreement which provides a grant of loans to respondent on a revolving basis. The agreement is some four pages in length. It covers all contingencies and without question qualifies as a "security agreement" under the pertinent provisions of G. L. 1956, Title 6A, chap. 9, the Uniform Commercial Code. The agreement provides that the bank is to have security interest in and to all of respondent's receivables both "now existing and hereafter arising." While the primary aim of the security agreement

was to provide direct loans to respondent secured by the receivables, it was also agreed that the security interest was given to insure the payment of all other obligations owed at any time by respondent to the bank. The parties also agreed that as each advance of funds was issued by the bank, respondent would deliver a note therefor and upon delivery of each such new note, the preceding note would be discharged.

On December 6, 1966, the bank filed a duly executed financing statement in the secretary of state's office. This statement described the collateral as "Accounts Receivable."

The bank's record of its dealings with respondent are an exhibit. They indicate that on December 5, 1966, the accounts receivable financing was commenced with an advance of $59,800 for which respondent gave the bank its promissory note; that from time to time other advances were made for which new notes were delivered, each new note covered the then outstanding indebtedness plus the new advance. The last such note was delivered on August 16, 1967, and was in the principal amount of $82,500. At the time of the superior court hearings, the principal sum due the bank was $54,551.22.

The bank and respondent's negotiations were conducted on, what is described in banking circles, as a non-notification basis. In other words, upon receipt of his bill, respondent's customer would pay respondent who in turn would deposit these funds into the loan account. The bank would then credit the amount of the deposit against the outstanding balance of the loan.

It was disclosed at the hearing that respondent had guaranteed the payment of notes given the bank by Jaro Company. Jaro was a corporation organized for the sole purpose of holding title to the equipment used by respondent in its business. Jaro is also in receivership. In addition,

respondent's checking account at the bank had been overdrawn to the extent of $15,737.62. The bank claims that the indebtedness of these two items is secured by the December 1966 agreement.

The trial justice in his decision, which is embodied in the judgment before us, refused to give the bank status as a secured creditor because he said the bank obtained a subsequent security agreement from respondent in August 1967. This second agreement and the assignment of accounts receivable executed on August 16, 1967, the court declared, showed that the bank had "abandoned" its original security agreement. We believe for the reasons which follow that the trial justice has erred.

First of all, the trial court has misconceived the nature and effects of two documents in the record which were executed in August 1967. There is no second security agreement. What is in the record is a promissory note and an assignment of certain accounts receivable. The assignment was executed because the security agreement expressly states that respondent would deliver to the bank schedules of its accounts receivable and from time to time execute a printed form furnished by the bank which would assign such accounts to the bank. While we believe that this assignment was not necessary,[1] we cannot fault the bank's display of a superabundance of caution.

In his decision, the trial court expressed some doubt as to whether the financing statement which described the collateral as "accounts receivable" was sufficient to perfect a security interest in those accounts which arose subsequent to the execution of the security agreement. The court, however, made no express finding in this regard but rejected the bank's claim on the basis that it had forfeited its rights by executing the second security agreement. The

---

[1]See: 2 Coogan et al., Secured Transactions under the Uniform Commercial Code §15.08 (2) (a), p. 1600.

co-receivers have apparently recognized the superior court's misconception of the August 1967 documents because they direct the major portion of their brief to the insufficiency of the description of the collateral. They claim that the only secured interest the bank might have is in those accounts receivable which were on respondent's books on December 5, 1966. We disagree.

We believe that the co-receivers' myopic view of the bank's financing statement does violence to the aims and purposes of the Uniform Commercial Code. Under the code, a financing statement is required to indicate the types or describe the items of collateral. §6A-9-402(1). This section provides for a so-called "notice filing" as opposed to the former practice of recording the entire instrument. The purpose of filing is to put the public on notice that a prior claim has been staked out on the debtor's collateral. The description of the collateral need not be as precise as was previously required in the case of chattel mortgages. Section 6A-9-110 provides that the financing statement's description is sufficient if it "reasonably identifies" what is described. A financing statement need *not* provide an interested person with *all* the information he needs to understand a secured transaction but only with the information that such a transaction has taken place and that the particulars thereof may be obtained from the named security party at the address shown as provided in §6A-9-208. See: *Plemens* v. *Didde-Glaser, Inc.,* 244 Md. 556, 224 A.2d 464.

Any person with even the remotest sense of what is going on in the world of finance when viewing the description set forth in the instant financing statement would become aware that the collateral here has a rapid turnover. An everyday filing of financing statements would be ludicrous.

A most persuasive opinion upholding the sufficiency of the bank's financing statement is found in *In Re Platt,* 257

F.Supp. 478 (D.C.E.D. Pa.). There the filed financing statement described the collateral as "Inventory and Accounts Receivable." In rejecting an argument identical to one being offered by the co-receivers, the court said:

> "A detailed description of the collateral in the case of accounts and inventory would require the filing of daily statements. The addition of the word 'future' to 'accounts receivable and inventory' would not seem to help an interested party in determining the status of the debtor. It should be clear that the creditor is concerned with tying up whatever is the current inventory and accounts receivable of the debtor. No reasonable searcher of the records would conclude that the secured party had a lien on only the past accounts and inventory of the debtor, especially where the debtor is in an active retailing business."

In *Evans Products Co.* v. *Jorgensen*, 245 Ore. 362 at 367, 421 P.2d 978 at 981, the financing statement said "inventory." The court stated:

> "The financing statement made no specific mention of the after-acquired property. The function of the financing statement is different than that of the security agreement which did include after-acquired property in the description of the collateral. The former is intended to give would-be creditors notice that there may be a prior security interest in the same collateral, while the latter contains the agreement between the secured party and debtor. The entire agreement need not be put on public record. The statement as filed is sufficient to warn prospective creditors that Evans' broad description of collateral as 'inventory' may well include after-acquired property."

Here, in our opinion, the description of the collateral as "accounts receivable" sufficiently identified the collateral as to put a prospective creditor on notice of the probability that the security agreement did embrace present and future accounts receivable. Any other view would ignore the realities of the world of finance. Accounts-receivable financ-

ing plays an important part in the commercial affairs of this country. If we were to adopt the co-receivers' view as to the extent of the collateral, subject to a security interest, such a step might well impede the continuous flow of credit which is so necessary and vital to today's businessmen. This we refuse to do.

We therefore hold that the description set forth in the bank's financing statement perfected its security interest in the accounts receivable presently in the hands of the co-receivers. It follows, therefore, that respondent's indebtedness represented by the money loaned it by the bank is secured with an interest in the receivables.

The trial justice further erred in holding that the bank had no interest in the accounts by virtue of respondent's endorsement of the Jaro note or its overdrawn checking account. The security agreement, as noted before, provides the bank's interest in the receivables is to secure the payment of any other obligations owed to the bank by respondent. The agreement then defines "obligations" to include, "* * * all Advances made hereunder, including any Advance of even date, and all other indebtedness, liabilities and obligations owing by us to you, now existing or hereafter arising or acquired by you, whether absolute or contingent, joint or several, matured or unmatured, direct or indirect, primary or secondary and all expenses and other sums to which you are entitled hereunder."

It is obvious that the language cited is all-encompassing and embraces within it the respondent's liability as an endorser and as a depositor with an overdrawn account. The security interest covers these two items.

The petitioner's appeal is sustained. The judgment appealed from is vacated and the cause is remanded to the superior court for further proceedings.

*Edwin O. Halpert, Samuel A. Olevson,* for Rhode Island Hospital Trust Company, Appellant.

*John D. Lynch, Marvin A. Brill,* for Appellee.