**FIRST NATIONAL BANK AND TRUST COMPANY OF VINITA, OKLAHOMA, a corporation, Additional Defendant on Cross-Complaint-Appellant,**

v.

**ATLAS CREDIT CORPORATION, a corporation, Defendant and Cross-Petitioner-Appellee.**

**James B. WEEDIN and Meredith M. Weedin, Defendants-Appellants,**

v.

**ATLAS CREDIT CORPORATION, a corporation, Defendant and Cross-Petitioner-Appellee.**

**Nos. 47–68, 48–68.**

United States Court of Appeals Tenth Circuit.

Nov. 18, 1969.

Rehearing Denied in No. 48–68 Dec. 30, 1969.

James R. Ryan, Tulsa, Okl. (George P. Pitcher, Vinita, Okl., with him on the brief) for appellant First National Bank & Trust Co. of Vinita, Okl.

Fred H. Miller, Norman, Okl., for appellee Atlas Credit Corp.

Alvin L. Floyd, Tulsa, Okl., for appellant James B. Weedin.

Hicks Epton, Wewoka, Okl., for appellee Atlas Credit Corp.

Before PHILLIPS, LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This appeal arose out of an action to foreclose a real estate mortgage upon ranch property in Craig County, Oklahoma. The mortgage was successfully foreclosed and the real estate mortgagee is no longer interested in the case.

Atlas Credit Corporation and its subsidiary, Atlas Subsidiaries of Missouri, Inc., were originally joined as defendants in the mortgage foreclosure action because they held junior liens on the real estate involved and claimed a security interest in the livestock grazed upon the real property in question. Atlas Credit Corporation has been assigned the interest of its subsidiary and will be referred to as Atlas.

Atlas filed an answer counterclaiming foreclosure of its junior lien on the real estate and seeking recovery of the livestock given as additional security for money loaned by them to defendant debtors. Atlas joined the First National Bank and Trust Company of Vinita, Oklahoma (Bank) as an additional defendant who claimed a prior security interest in the livestock pledged to them. The Bank is the other party involved in the main issue of this appeal.

The issue between Atlas and the Bank relates to the priority of security interests which cover the same livestock and equipment.

Defendants Weedin, a dentist and his wife, officers and principal stockholders of the W. E. Ranch, Inc., who negotiated the loans here in question, appeal the denial of their discharge in bankruptcy. This issue relates to the trial court's finding that certain representations to Atlas' assignor were fraudulent and therefore the debt to Atlas was non-dischargeable in bankruptcy.

The court found in favor of Atlas on the priority question, and it is agreed that this question is based primarily on the interpretation of Title 12A, § 9–312 (5) Okl.Stat.Ann. (1961) (Uniform Commercial Code, § 9–312(5)).

■ The law of the state where the collateral is located at the time of the transaction is the governing law without regard to possible contacts in other jurisdictions. Uniform Commercial Code, § 9–102, Comment 3, (12A Okl.Stat.Ann. § 9–102).

The record discloses that the Bank loaned $38,422.34 to the debtors on October 22, 1963, and properly filed a financing statement covering specifically described livestock and "all other cattle now owned or later acquired." Although there was evidence indicating otherwise, the trial court found and for the purpose of this appeal the parties agree that a security agreement was not executed nor received by the Bank at this time, but, on April 30, 1965, a security agreement was made and executed by the debtors. It is a note given by the debtors at this time upon which the Bank's judgment is based.

On February 4, 1964, Atlas loaned the debtors $34,000.00 for which debtors executed a financing statement and a security agreement covering the debtor's livestock and equipment then owned or thereafter acquired. The financing statement was filed February 11, 1964. The Bank had notice of this filing within a week thereafter.[1]

The Bank records disclose a course of business transactions between the debtors and the Bank after October 22, 1963, wherein money in excess of the original $38,422.34 loaned was advanced and repaid until the total was calculated on April 30, 1965, and set forth in the security agreement then executed in the amount of $27,301.00.

The appellate courts of Oklahoma have not considered the issue here presented under the code so far as we can ascertain.

Because the Uniform Commercial Code is here involved and believing it is a step in the right direction away from the confused and archaic past of the law of commerce, we seek a uniform literal construction of the act.

1. At the outset we should note that the omission of a reference to "knowledge" in § 9–312 indicates to us that the presence or absence of knowledge of the Atlas Security Agreement is irrelevant. This view, not clarified in the official Uniform Commercial Code Comment, is made explicit by the Oklahoma Code Comment following the section.

We approach the issue pursuant to the reasoning of such cases as *Shircliff v. Elliott*, 384 F.2d 947 (6th Cir. 1967): "In reaching a result, this Court must apply the statute in a manner consonant with the literal meaning of its terms and in a manner to best effectuate its overriding purpose." *supra* at 950.

The trial court in the case at bar refused to accept the language of the code which directs that priorities between conflicting security interests in the same collateral shall be determined in the order of filing a financing statement if both are perfected by filing. Uniform Commercial Code, § 9–312(5). Perfection occurs when the security interest later attaches at the time the transaction takes place and the security agreement is executed. Thus the filing date, which determines priority, may precede the perfection date. *See* 2 Gilmore, Security Interests in Personal Property, § 34.4 at 909.

12A Okl.Stat.Ann. § 9–312(5) (Uniform Commercial Code § 9–312(5)) reads as follows:

"(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), *priority between conflicting security interests in the same collateral shall be determined as follows:*

"(a) *in the order of filing if both are perfected by filing, regardless of which security interest attached first under Section 9–204(1) and whether it attached before or after filing;*

"(b) in the order of perfection unless both are perfected by filing, regardless of which security interest attached first under Section 9–204(1) and, in the case of a filed security interest, whether it attached before or after filing; * * *." (Emphasis added).

The Oklahoma Code Comment following this section reads as follows:

"(5) This is a change of Oklahoma law. It creates a 'Race of Diligence'.

Priority between conflicting security interests are:

"(a) In the order of filing if both are perfected by filing.

"(b) In the order of perfection unless both are perfected by filing. Example 2 in the Uniform Commercial Code Comment covers this situation. If one is perfected by taking possession the time of taking possession is the time used as to that one in determining which has priority."

The Bank argues that the clear mandate of section 9–312(5) of the U.C.C., as explained in Example 1 in Comment 4 of the official comments, operates to give priority to the Bank. Example 1 reads as follows:

"Example 1. A files against X (debtor) on February 1. B files against X on March 1. B makes a non-purchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. It makes no difference whether or not A knew of B's interest when he made his advance.

"The problem stated in the example is peculiar to a notice filing system under which filing may be made before the security interest attaches (See Section 9–402). The Uniform Trust Receipts Act, which first introduced such a filing system, contained no hint of a solution and case law under it has been unpredictable. This Article follows several of the accounts receivable statutes in determining priority by order of filing. The justification for the rule lies in the necessity of protecting the filing system—that is, of allowing the secured party who has first filed to make subsequent advances without each time having, as a condition of protection, to check for filings later than his. * * *"

Before going further into an analysis of the effect of the first-to-file priority rule of U.C.C. § 9–312(5) (a) on this case, we consider whether the facts allow

analyzing it pursuant to the teaching of Example 1 to Comment 4 of the official comments to the U.C.C., *supra* (adopted in Oklahoma).

Atlas argues that this case does not fit within the single advance situation illustrated by Example 1 to Comment 4 because more than one loan was in fact made by the Bank.

Further, they argue that this was not a situation where future advances were contemplated in the initial security agreement as illustrated by Examples 4 and 5 to Comment 4 because the trial court found there was no security agreement executed at that time. Atlas urges upon this court that the situation presented is nothing more than a series of separate secured loans with no future advance clause providing that future advances of the Bank were to be secured by the collateral filed against on October 22, 1963.

Atlas then argues that, in accordance with this reasoning, it is entitled to priority in line with the decision in Coin-O-Matic Service Co. v. Rhode Island Hospital Trust Co., 3 U.C.C.Rep. 1112 (R.I. Super.Ct.1966). In this case one Doroff purchased a car on credit and gave a security interest in it which was perfected by filing. The chattel paper on this transaction was assigned to the defendant. The security agreement contained no provision for future advances. A year later, Doroff became indebted to the plaintiff and gave it a security interest in the car which was also perfected by filing. Shortly thereafter, the defendant loaned Doroff $1,000 part of which was used to pay off the old debt and that security interest was cancelled.

The question, when Doroff went bankrupt, was whether defendant had a prior claim on the car because he had filed first even though the first security agreement had been cancelled. The court held that he did not because a new security interest is a separate transaction and requires a separate filing for perfection, unless the initial security interest has a clause securing future advances.

"That is to say, a single financing statement in connection with a security agreement when no provision is made for future advances is not an umbrella for future advances based upon new security agreements, notwithstanding the fact that involved is the same collateral." 3 U.C.C.Rep. 1112 at 1120.

It seems clear that if, as the record shows the Bank intended, a security agreement *had* been executed at the time the 1963 financing statement was filed, we could not reverse the trial court without meeting the *Coin-O-Matic* case head on. What differentiates this case is the trial court's finding that there was no security agreement executed in 1963. By accepting the trial court's holding that no security interest attached until April 30, 1965, we would conclude that only one transaction is involved. On the other hand, if we were to acknowledge normal business realities and accept Atlas' theory that there must have been a series of separate secured loans by the Bank, then the record discloses that the security interests provided that they covered future advances by the Bank. The claimed security interest of October 22, 1963, is, of course, not in the record. The trial judge admitted into the record a copy of the form being used by the Bank at that time and it, as well as the April 30, 1965 agreement, clearly provides that future advances are to be covered thereby. Because of the disposition we make, we need only note in passing that under either of these possibilities, *Coin-O-Matic* is distinguishable.

In *Coin-O-Matic*, the intervening secured creditor obtained priority when the initial financing statement and security agreement were liquidated because the court held that the code contemplates that the security interest relates back to an unliquidated prior financing statement. This is the literal interpretation of § 9–312(5) (a).

However, it seems equally clear that the Bank, intending but somehow failing to get a security agreement when the

October, 1963, loan was made, would fall heir to a windfall were we to hold that this case is controlled by Example 1 to Comment 4 under U.C.C. § 9–312(5). Under the trial court's findings, the loan of $38,422.34 was unsecured and if these insolvency proceedings had come before the security agreement of April, 1965, was entered into, the Bank would have been an unsecured creditor. The facts of the case before us do not fit squarely under Example 1 in the Comment because that example discusses application of U.C.C. § 9–312(5) to a single advance by the secured party to the debtor after filing of a financing statement and subsequent to perfection of a second security interest. The record indicates that there were several advances and payments between the Bank and the debtors between October 22, 1963 and April 30, 1965. It is therefore clear that there was not simply a single advance as is contemplated in Example 1. Likewise, although the Bank perhaps intended to enter into a series of secured transactions protected by the October 22, 1963 filing (which would have then brought the case under *Coin-O-Matic*), the lower court's finding precludes basing an affirmance solely upon that case.

■ We therefore conclude that we cannot base our conclusion upon either the application of the Example or the *Coin-O-Matic* case. This analysis, however, is not determinative of our case.

Undoubtedly the trial court was chagrined by the fast and loose dealings between the debtors and the Bank and the duplicate dealings with Atlas and therefore felt the equities weighed in favor of Atlas.

The simple answer to this approach is that Atlas had an opportunity to protect itself by checking the files for financing statements and if it had, it would have learned the Bank had a potential interest in the cattle and their increase.

"Banks have traditionally loaned money to ranchers in return for a promissory note and a consensual lien in livestock held by the rancher. The problems involved in using livestock as collateral are numerous, but central among them is the problem of keeping account of the animals * * * Since the collateral cannot be held by the lender, the security agreement typically includes a promise by the borrower assuring that the livestock will not be sold or transferred without the written consent of the secured party. The security interest in the collateral is perfected by filing with the county clerk in the county of the debtor's residence. In this manner, constructive notice that the livestock is subject to a mortgage is given within the county." *Comment*, Commercial Law—Uniform Commercial Code—Security Interests in Livestock, 8 Natural Resources Journal 183.

12A Okl.Stat.Ann. § 9–208 (Uniform Commercial Code § 9–208) provides that a debtor may request information from the lender as to the amount due on the obligation and the collateral covered by the security agreement. If the secured party, without reasonable excuse, fails to comply with the request, he is liable for any loss caused to the debtor thereby and if the debtor has properly included in his request a good faith statement of the obligation or a list of the collateral or both, the secured party may claim a security interest only as shown in the statement against persons misled by his failure to comply. Thus, by its inadvertence Atlas permitted itself to be defrauded.

If notice filing under the code has any efficacy or future value in the commercial world, it must be honored in this case, giving priority to the Bank. The "first-to-file" rule of U.C.C. § 9–312(5) (a) must be recognized.

An analysis used by the court in *Coin-O-Matic* is appropriate for this case:

"It would seem to this court that without a consideration of the meaning of § 9–312(5) this case might properly be decided on what the parties themselves did and what the parties themselves intended." 3 U.C.C.Rep. at 1120.

Thus it is apparent to us that the conduct of the Bank and Atlas' assignor brings this case within the first-to-file priority rule of that section and necessitates reversal of the trial court's determination of priority.

■ We further hold that the record clearly demonstrates and the court properly found fraud on the part of Weedins. The trial court therefore was correct in its determination that the debt to Atlas was non-dischargeable in bankruptcy.

We therefore reverse the Atlas judgment on the issue of priority over the Bank and affirm the judgment in favor of Atlas as it relates to debtors Weedin.

Reversed in part; affirmed in part.