**SECURITY NATIONAL BANK AND TRUST COMPANY OF NORMAN, Oklahoma, Appellee,**

v.

**DENTSPLY PROFESSIONAL PLAN, a Division of Dentsply International, Inc., Appellant.**

No. 51285.

Supreme Court of Oklahoma.

Sept. 23, 1980.

Luttrell, Pendarvis & Rawlinson by Gary C. Rawlinson, Norman, for appellant.

Phillip Warren Redwine, Wm. Lee Borden, Jr., Norman, for appellee.

OPALA, Justice:

This appeal deals with priorities between two creditors with security interests in the same collateral. The questions to be answered are: [1] Did the trial court err in refusing to reinstate the first creditor's security interest to its priority which was lost by that creditor's release of its original financing statement? [2] Was the debtor's overdraft obligation due the second creditor a "future advance" pursuant to future–advances clause in their security agreement?

We hold that [1] the trial court did not err in establishing the priority of the second creditor's security interest in the collateral in suit and [2] the amount of overdraft on debtor's business bank account stood secured under the future–advances clause of the security agreement.

On December 26, 1973, Ronald Worley [Debtor] purchased dental equipment under a conditional sales contract and security agreement which was assigned to The Dentsply Professional Plan, a division of Dentsply International, Inc. [Dentsply]. A financing statement covering the equipment was filed the same day in Oklahoma County. Some 18 months later, on July 11, 1975, Debtor borrowed money from Security Bank and Trust Company of Norman, Oklahoma [Bank] and executed a promissory note with security agreement in favor of the Bank. The financing statement filed by the Bank in Oklahoma County covered certain assets of the Debtor, including the same dental equipment which was the subject of the security agreement between Debtor and Dentsply. Debtor executed a renewal of his note to the Bank on July 24, 1976. Debtor's obligation to Dentsply was refinanced September 23, 1976 and a financing statement covering the dental equipment was filed by Dentsply in Cleveland County on September 27, 1976. Dentsply then released, on October 27, 1976, its financing statement on file in Oklahoma County.

The appeal arose out of a suit by the Bank to recover on Debtor's promissory note and for his overdrafts on two of his bank accounts. Dentsply—a party–defendant in the suit because of its status as claimant to some of the collateral—sought to have its security interest declared prior to that of the Bank.

The trial court determined that the perfected security interest of the Bank, though originally later in time, had advanced in priority when Dentsply released its prior perfected security interest in Oklahoma County. The amount of Debtor's overdraft on his business bank account—found to be secured under the future–advances clause in the security agreement—was added to the Debtor's total obligation that may be satisfied from the sale of the collateral. The future–advances clause was held not to secure an overdraft on Debtor's other (personal) bank account. From the trial court's determination of priorities between competing creditors with security interests in the same collateral and from its finding that the Bank stood secured with respect to the amount representing Debtor's business account overdraft, Dentsply brings this appeal.

I

PRIORITY OF THE SECURITY
INTERESTS

Dentsply contends that equity should reinstate its security interest to the priority lost by the release of its financing statement in ignorance of the Bank's security

interest. It relies on pre–Code case law [1] and on the terms of § 1–103.[2] That code section provides that "unless displaced by the particular provisions of this Act" the principles of pre–existing law and equity shall supplement the Code provisions.

With narrowly–prescribed exceptions, the Code provides that a security interest is not perfected unless a financing statement is filed.[3] The filing requirements are mandatory. Our case law has given strict obedience to those commands.[4]

█ A situation similar to that in the case at bar occurs when a perfected security interest has lapsed due to creditor's failure to comply with the Code's continued–perfection requirements.[5] When a lapse occurs the security interest—by uniform holdings—becomes unperfected as against all other interests. This results in the holder of a perfected security interest being advanced in priority, even though before the lapse that interest was junior. In these cases—it is reasoned—the prior secured party could have protected its rank of priority by complying with Code requirements for continued perfection. For purposes of determining priorities between competing interests the lapsed perfection is simply likened to a release made in ignorance of another security interest in the same *res.* Applying the rationale of lapsed perfection cases to the question at bar, the security interest of Dentsply became unperfected when the release was effected. The Bank, as holder of a perfected security interest in the same *res, eo instante* advanced in priority thus defeating Dentsply's former superiority.

Although strict adherence to the Code requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the market place should be able to place on the Code provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience.[6]

█ The proper place to file a security interest in collateral classified as business property, e. g. equipment and inventory, is in the office of the county clerk of Oklahoma County.[7] Dentsply contends that its filing in Cleveland County—though improper—should nonetheless be effective to give it priority under the terms of § 9–401(2). That code section provides that a filing which is made in good faith in an improper place is nevertheless effective against any person who has "knowledge of the contents of such financing statement." The good–faith reference in the section requires that an attempt be made to file. But no amount of good faith can give effect to an entirely improper filing of a financing statement *of which no one has knowledge.*[8] For purposes of § 9–401(2) "knowledge" means ac-

1. *South Beach Lumber Corp. v. Swank*, 210 Or. 383, 311 P.2d 1018 [1957]; *Pearce v. Buell*, 22 Or. 29, 29 P. 78 [1892]; *Chase v. McKenzie*, 81 Or. 429, 159 P. 1025 [1916]; *Cornwell v. Moss*, 95 Kan. 229, 147 P. 824 [1915]; *Christy v. Scott*, 31 Mo.App. 331 [1888]; *Foster v. Whitenton*, 96 Okl. 187, 221 P. 52 [1923]; *Watson v. Butler*, 170 Okl. 350, 40 P.2d 653 [1935].

2. 12A O.S.1971 § 1–103 of the Uniform Commercial Code; all section references in the text are to 12A O.S.

3. 12A O.S.1971 § 9–302.

4. *First State Bank in Talihina v. United Dollar Stores*, Okl., 571 P.2d 444 [1977].

5. *Eastern Indiana Production Credit Ass'n v. Farmer's State Bank*, 31 Ohio App.2d 252, 287 N.E.2d 824 [Ohio App.1972]; *Stearns Mfg. Co.,* *Inc. v. National Bank and Trust Co. of Central Penn.*, 12 UCC Rep. 189 [Pa.Ct.Com.Pl. 1972]; *Security Savings Bank of Marshalltown, Iowa v. United States*, 440 F.Supp. 444 [D.C.S.D. Iowa 1977]; *Morse Electro Products Corp. v. Beneficial Industrial Loan Co.*, 90 Wash.2d 195, 579 P.2d 1341 [1978]; 12A O.S.1971 § 9–403(2).

6. *First State Bank in Talihina v. United Dollar Stores*, supra note 4. *Uniroyal, Inc. v. Universal Tire and Auto Supply Co.*, 557 F.2d 22 [1st Cir. 1977].

7. 12A O.S.1971 § 9–401(1)(c) (amended by Okl. Sess.L. 1975, c. 313, § 3).

8. *First State Bank in Talihina v. United Dollar Stores*, supra note 4.

tual knowledge or reason to have actual knowledge, and not constructive knowledge in any broader sense.[9]

The Bank perfected its security interest after Dentsply's proper original filing in Oklahoma County but before the later improper Cleveland County filing. The financing statement that was improperly filed was not of record at the time Bank loaned money to the Debtor. Although Bank could not·have had knowledge of the contents of that particular document at the time it made the loan, it could have had knowledge of the contents of the financing statement which was properly filed at that point in time. The two financing statements have the same contents. Would knowledge of the contents of the properly–filed—but later released—financing statement be knowledge of the contents of the subsequent improperly–filed financing statement within the meaning of § 9–401(2)?

Other jurisdictions are not in accord as to the meaning of the code phrase in § 9–401(2) "knowledge of the contents of such financing statement". Some courts have held knowledge of a creditor's prior security interest to be "knowledge of the contents of such financing statement",[10] whereas others have reached the opposite conclusion.[11] Although the specific question here has not been settled, we have stated that "when a subsequent lien claimant has notice of a prior lien, the priority of the earlier lien is

not defeated because it was imperfectly filed."[12]

According to the position taken by some scholars, the history of § 9–401(2) indicates that code section was intended to deal mainly with those situations in which a searcher actually stumbles across a improperly–filed financing statement. This school of thought regards assumptions that knowledge of the prior security interest equals to knowledge of the contents of the financing statement as overly broad.[13] The UCC comments to § 9–401(2)[14] state that by this provision the code rejects the view that an improperly–filed record is ineffective to impart notice to a person who knows of it. The pure race aspect of § 9–312(5) thus tends to be undermined when by an expanded reading of § 9–401(2) knowledge of a security agreement is deemed equivalent to knowledge of the contents of the financing statement.[15]

Priority between two competing security interests is determined (1) by the order of filing, if both are perfected by filing or (2) if both do not perfect by filing, by the order of perfection irrespective of knowledge of a prior competing security interest.[16]

■ Under a very broad construction of § 9–401(2), knowledge of a prior security interest would always result in subordination to that interest. A far more reasonable construction of the phrase *"knowledge of the contents of such financing statement"* might well be something more than

**9.** 12A O.S.1971 § 1–201(25); *First State Bank of Talihina v. United Dollar Stores*, supra note 4; *U.S. v. Ed Lusk Construction Co., Inc.*, 504 F.2d 328 [10th Cir. 1974].

**10.** *In re Davidoff*, 351 F.Supp. 440 [D.C.S.D. N.Y. 1972]; *In re Komfo Products*, 247 F.Supp. 229 [D.C.E.D. Pa. 1965]; *Matter of Enark Industries, Inc.*, 383 N.Y.S.2d 796 [1976]; *Chrysler Credit Corp. v. Bank of Wiggins*, 358 So.2d 714 [Miss.1978]; *Franklin National Investment Corp. v. American Swiss Parts Co.*, 42 Mich. App. 211, 201 N.W.2d 673 [1972].

**11.** *In re County Green Ltd. Partnership*, 438 F.Supp. 693 [D.C.W.D. Va. 1977]. The court in *In re Advertising Distributors of America*, 2 UCC Rep. 548 [D.C.E.D.Ohio, Ref. 1965], aff'd 3 UCC Rep. 225 [D.C.N.D. Ohio 1965] squarely held that knowledge of a prior creditor's lien

was not "knowledge of the contents of such financing statement."

**12.** *First State Bank in Talihina v. United Dollar Stores*, supra note 4.

**13.** J. White and R. Summers, Uniform Commercial Code, § 23–15.

**14.** UCC comment 5 to § 9–401(2).

**15.** *In re County Green Ltd. Partnership*, supra note 11.

**16.** 12A O.S.1971 § 9–312(5), UCC comment 4, example 1; *First National Bank and Trust Co. of Vinita, Okl. v. Atlas Credit Corp.*, 417 F.2d 1081 [10th Cir. 1969]; *In re Smith*, 326 F.Supp. 1311 [D.C.D.Minn. 1971].

mere knowledge of the prior security interest but less than a requirement that the subsequent creditor actually have seen the improperly–filed financing statement. In the instant appeal, it is not necessary to settle this precise point of law. Even though Dentsply seems to argue otherwise, the record clearly shows a stipulation of the parties that the Bank, at the time it made the loan to the Debtor, did not have the requisite *actual knowledge* of Dentsply's security interest and that the Bank did not later become familiar with the contents of Dentsply's financing statement. We hence need not decide here what information is necessary to meet the Code's requirement of "knowledge of the contents of such financing statement." The benefit of the § 9–401(2) exception is clearly unavailable to Dentsply and the question must be saved for another day.

## II

## FUTURE–ADVANCES CLAUSE OF SECURITY AGREEMENT

Having established the validity of the Bank's priority status, we must next determine [1] whether the security agreement contained language sufficient to cover future advances and [2] if so, whether the Debtor's overdraft in his business bank account may be considered as a future advance under the security agreement.

The validity of a future–advances clause in security agreements has been recognized. *Texas Kenworth Co. v. First National Bank of Bethany*, Okl., 564 P.2d 222, 225 [1977]. The Code, in § 9–204(5), provides that "[o]bligations covered by a security agreement include future advances or other val-

ue whether or not the advances or value are given pursuant to commitment."

■ When the security agreement clearly indicates that the debtor's obligation includes future advances, the collateral pledged will stand as security for future advances.[17] In *Texas Kenworth* we found that the reference therein to "all other indebtedness" would not include post–agreement loans.[18]

■ The relevant portion of the Bank's security agreement with the Debtor provides:

This security agreement is given to secure: (1) Payment of a note dated 7–11–75 executed and delivered by Debtor to Bank in the principal sum of $12,000.00, payable as to principal and interest as therein provided; (2) future advances to be evidenced by like notes to be made by Bank to debtor at Bank's option; (3) all expenditures by Bank for taxes, insurance, repairs to and maintenance of the collateral and all costs and expenses incurred by Bank in the collection and enforcement of the note and other indebtedness of Debtor; and (4) *all liabilities of Debtor to Bank now existing or hereafter incurred,* matured or unmatured, direct or contingent, and any renewals and extensions thereof and substitutions therefor." [Emphasis added]

The phrase "all liabilities ... now existing or hereafter incurred" indicates that the collateral was intended to serve as security for future as well as present debts. We hence hold that the language used is sufficient to secure future advances.

■ The test most generally applied to determine whether future liabilities fall

17. *Texas Kenworth Co. v. First National Bank of Bethany,* Okl., 564 P.2d 222, 225 [1977].

18. In *Texas Kenworth,* supra note 17, 564 P.2d at 226, we compared the language in the security agreement in that case with that in two other cases in which the security agreement *clearly indicated* that the collateral involved was to serve as security for future as well as present debts. In the first case [*In re Public Leasing Corporation,* 488 F.2d 1369, 1375 (10th Cir. 1973)], the terms of the agreement in pertinent part provided: "Buyer ... is granted a

security interest in any additional security collateral ... as security for the payment of ... balance, and also for any and all liabilities of Buyer to 'Seller' *now existing or hereafter incurred.* [Emphasis added]" In the second case [*John Miller Supply Co., Inc. v. Western State Bank,* 55 Wis.2d 385, 199 N.W.2d 161, 162 (1972)] the agreement provided in pertinent part: "(2) 'OBLIGATIONS' means all Debtor's present and future debts, obligations and liabilities to Bank of whatever nature."

within a security agreement's future–advances clause is whether the debts are "of the same class as the primary obligation" [19] and "in contemplation of the parties at the time the agreement was executed." [20] Although this test was not expressly applied in *Texas Kenworth*, we said there that if the security agreement subjected the collateral to future advances, the creditor (Kenworth) would be entitled to first priority because the debts *"arising out of subsequent transactions of the same type"* remain unsatisfied.[21]

We deem this test to be appropriate for application in the instant case and next pass to determine whether the overdraft on Debtor's business bank account may be viewed as being of the same class or type as the primary obligation and was so contemplated by the parties at the time the security agreement was executed.

A post–agreement extension of business credit by a lender to a borrower has been held a future indebtedness within "reasonable contemplation" of the future–advances clause of the security agreement.[22] Different loans intended to provide a debtor with "working capital" have also been held to be all of the same class within the meaning of this test.[23]

██ In the instant case, an affidavit of the Bank's officer indicated the original loan was requested as "operating monies" for maintenance of Debtor's dental practice. According to the undisputed answer of the Debtor, the proceeds of the original loan were used for the purchase of office furnishings and related miscellaneous expenses. The record as a whole is consistent with an inference that the overdrawn funds in question were spent to pay practice–related expenses.

In support of its position the Bank cites two cases in which overdrafts by a debtor were determined to be covered by the security agreement.[24] In those cases the court's decision was reached without stating whether or how the overdrafts came to be related to the original obligation.[25]

Dentsply refers us to a case in which overdrafts were held not included in the obligation covered by the security agreement.[26] The facts in that case are distinguishable from the case at bar. There, the court determined that a certain section of the security agreement set forth all the obligations—i. e. loans, evidenced by notes, interest and certain expenses—secured by the agreement. It was silent as to future or any other indebtedness. There was also no indication the parties ever intended by their agreement to include an addition of

**19.** *In re White Plumbing and Heating Co., Inc.*, 6 UCC Rep. 467 [D.C.E.D. Tenn., Ref. 1969]; *Community Bank v. Jones*, 278 Or. 647, 566 P.2d 470, 482 [1977]; *Marine National Bank v. Airco, Inc.*, 389 F.Supp. 231, 234 [D.C.W.D. Pa. 1975]; *Kimbell Foods, Inc. v. Republic National Bank of Dallas*, 557 F.2d 491, 495 [5th Cir. 1977], aff'd 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 [1979].
Cf. *Thorp Sales Corp. v. Dolese Bros. Co.*, 453 F.Supp. 196, 200 [D.C.W.D. Okl. 1978]. In *Thorp* the court stated "that it is no longer necessary, as between the original lender and the original debtor, for future advances to be of the same class as the primary obligation." There the creditor attempted to bring within the security agreement third–party claims—assigned to creditor by third–party claimants—against the debtor. The court held that the creditor could not do so under the agreement as written.

**20.** *In re Glawe*, 6 UCC Rep. 876 [D.C.E.D. Wisc.Ref., 1969]; *Kimbell Foods, Inc. v. Repub-*

*lic National Bank of Dallas*, supra note 19; *Community Bank v. Jones*, supra note 19.

**21.** Supra note 17, 564 P.2d at 224.

**22.** *Kimbell Foods, Inc. v. Republic National Bank of Dallas*, supra note 19.

**23.** *Marine National Bank v. Airco, Inc.*, supra note 19.

**24.** *South County Sand & Gravel Co., Inc. v. Bituminous Pavers Co.*, 106 R.I. 178, 256 A.2d 514, 518 [R.I. 1969]; *In re Midas Coin Co.*, 264 F.Supp. 193 [D.C.E.D.Mo. 1967].

**25.** In *South County Sand & Gravel Co. v. Bituminous Pavers Co.*, supra note 24, 256 A.2d at 518, the court stated that it was obvious that the language in the security agreement—"liabilities . . . now existing or hereafter arising"—embraced overdrafts.

**26.** *Community Bank v. Jones*, supra note 19.

overdrafts to the obligation secured by the collateral. Those factors—not present here—were decisive in the appellate court's determination that the overdraft debts were not included in the obligation covered by the agreement.

We hold that the amount of Debtor's post–agreement business–account over-draft, which the Bank had "covered" for him, represented a further extension of credit within the contemplation of the security agreement. The overdraft obligation was not so unrelated as to be in a class different from that of the Debtor's primary indebtedness. It is hence includable in the total obligation for which the collateral stands as security under the future–advances clause.

AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.