342 A.2d 738

**Edward A. HEIGHTS, Receiver of the Estate of Green Hills Lumber Co., Inc., Appellant,**

v.

**The CITIZENS NATIONAL BANK.**

Supreme Court of Pennsylvania.

Argued March 19, 1974.

Decided July 7, 1975.

Rehearing Denied Aug. 20, 1975.

50

52

Harry R. Levy, Pittsburgh, for appellant.

Roy F. Walters, Jr., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

On March 15, 1962, appellee, Citizens National Bank (hereinafter referred to as "Citizens") and Green Hills Lumber Co. (hereinafter referred to as "Green Hills"), duly executed an agreement in which Citizens agreed to advance the sum of $60,000 on a term basis and additional sums, not to exceed $60,000, on a revolving credit basis. Under the terms of the agreement, Green Hills granted Citizens a security interest in (1) all of its present and after acquired accounts receivable and proceeds arising therefrom; (2) all of its present and after acquired inventory as well as the proceeds of the sale of

such inventory; and (3) certain corporate stock owned by Green Hills in other corporations. On March 19, 1962, Citizens filed a financing statement with the Commonwealth of Pennsylvania indicating its security interest in the property of Green Hills. Citizens did not, at that time, file a financing statement in Allegheny County where Green Hills' sole place of business was located. On January 29, 1966, Citizens and Green Hills entered into a supplemental agreement which amended the 1962 agreement in that the amount of the loan was increased and the terms of repayment were modified. The 1966 amendment also added as security additional corporate stock which Green Hills had acquired from several account debtors. The 1966 amendment specifically provided that all other terms and conditions of the 1962 agreement were to remain in full force and effect. In order to underwrite the increased amount of the loan, Citizens entered into a Loan Participation Agreement with the Union National Bank on January 31, 1966. Green Hills was not a party to the Loan Participation Agreement since this agreement did not affect Green Hills' duty to repay its loans or the method of their repayment.

On March 15, 1967, Citizens filed a financing statement with the Prothonotary of Allegheny County. Then, on March 20, 1967, Citizens filed a Continuation Statement with the Secretary of the Commonwealth referring specifically to the original financing statement which had been filed on March 19, 1962.

During the next year Green Hills' financial difficulties worsened to the point where it was no longer able to fulfill its obligation to repay Citizens under the terms of the 1962 agreement as amended. Claiming default by Green Hills, Citizens, on February 14, 1968, took possession of Green Hills' inventory and accounts receivable as well as various other assets which were traceable as proceeds of the inventory and accounts receivable. On May

29, 1968 the Court of Common Pleas of Allegheny County, upon petition of another creditor of Green Hills, appointed appellant, Edward A. Heights, as Receiver for Green Hills. Thereafter, on March 18, 1969, the appellant, in his capacity as receiver, filed a suit in equity against Citizens challenging Citizens' priority status as a perfected security interest holder and its concomitant right to take possession and dispose of collateral subject to its security interest. The matter was presented to the trial court under a stipulated statement of facts. On January 8, 1973, the trial court filed an adjudication dismissing appellant's complaint. Exceptions were thereafter filed and dismissed and final decree was entered on June 7, 1973. This appeal followed.

Appellant raises several issues on appeal most of which are directed at defeating appellee's claimed status as a perfected security interest holder. Because of the complexity of the factual context in which these issues are raised, they will be considered ad seriatim as they arise in our analysis of the progression of events. All section references in this opinion are to The Uniform Commercial Code of Pennsylvania. Act of April 6, 1953, P.L. 3, § 9–101 et seq., *as amended and reenacted,* 12A P.S. § 9–101 et seq.

■■ Initially, it should be noted that under Section 9–301(3) of the Uniform Commercial Code a receiver in equity is accorded the status of a lien creditor. As such, his right to collateral is superior to that of creditors who have an *unperfected security interest* in the collateral but subordinate to that of creditors who have *perfected* their security interest in the collateral. Section 9–301(1)(b). In the normal situation wherein a debtor is in default, a secured creditor has the right to take possession of the collateral without judicial process and to sell or otherwise dispose of it and to apply the proceeds to the satisfaction of the indebtedness to him. Section 9–503. However, where the defaulting debtor has gone into re-

ceivership, the right of the secured creditor, as opposed to the right of the receiver, to take possession and dispose of the collateral is wholly dependent upon whether or not the secured creditor has perfected its security interest. *See, Industrial Packaging Prod. Co. v. Fort Pitt Pack. Int.,* 339 Pa. 643, 161 A.2d 19 (1960). In such cases, the unperfected security interest holder whose right to collateral is subordinate to that of the receiver cannot look to the collateral for payment of its debt. It will be put into a pool of creditors of similar status with the resultant probability of receiving only a limited *pro rata* share of the proceeds of the sale of assets by the receiver. On the other hand, the perfected security interest holder whose right to possession and disposition is superior to that of the receiver will most likely realize a higher degree of satisfaction, if not complete satisfaction, of the debtor's obligation to it.

The 1962 agreement, as signed by authorized representatives of Green Hills and Citizens, evidenced a clear mutual intent that Citizens was to receive a security interest in collateral described therein. Section 9–203. It is evident from the stipulated facts that Citizens' security interest *attached,* or came into existence, upon execution of the 1962 agreement. Section 9–204(1), and Section 9–204(3). Since Citizens did not take possession of any of the collateral, its security interest, which *attached* to the collateral in 1962, could not become a *perfected* security interest until it filed a financing statement in *both* the office of the Secretary of the Commonwealth and the office of the prothonotary of the county where the debtor had its sole place of business. Section 9–401 (1)(c) and Section 9–306(3). Unless a creditor has otherwise perfected its security interest, the failure to file in all of the required places renders the attempted perfection ineffective against all persons who do not have actual knowledge of the contents of the financing statement. Section 9–401(2). In the present case,

Citizens attempted to perfect its security interest by filing a financing statement in the office of the Secretary of the Commonwealth on March 20, 1962. It neglected, however, until 1967, to also file in Allegheny County where Green Hills had its sole place of business.

A filed financing statement which does not state a maturity date remains in effect for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse. Section 9–403(2). Upon timely filing of a continuation statement, the effectiveness of the original financing statement is continued for an additional five-year period. Section 9–403(3). In the present case, Citizens filed its original financing statement with the Secretary of the Commonwealth on March 20, 1962. Since the original statement did not contain a maturity date, it was incumbent upon Citizens to file a continuation statement within five years in order to continue the effectiveness of the original statement. The record reveals that Citizens did not file the continuation statement with the Secretary of the Commonwealth until March 20, 1967. The trial court, however, observed that "a glance at the calendar, . . . establishes that March 19, 1967 fell on Sunday, and under the 'Statutory Construction Act,' the secured party would then have until Monday, March 20, 1967, to file its continuation statement in Harrisburg in order to effect filing within the five-year period, Act of 1937, May 28, P.L. 1019, Article III, S. 38, 1959, August 11, P.L. 691, S–1–46, PSS 38. [46 P.S. § 538]" Thus, the trial court held that the filing of the financing statement was timely and that no lapse had occurred.

■ Appellant contends that the trial court erred in holding that the effectiveness of the original financing statement had not lapsed. Appellant's argument is twofold: First, it is asserted that the continuation statement was defective because it was not signed by the partici-

pating bank, the Union National Bank of Pittsburgh. This matter will be discussed at a later point in this opinion. Secondly, appellant urges that since Section 9–403(2) requires that a continuation statement be filed *"prior* to the lapse," a secured party does not actually have five years in which to file but rather five years less one day—the last day of the five-year period being the day on which the original statement lapses. Therefore, appellant argues that the last day of the filing period fell on Saturday, March 18, 1967, and not Sunday, March 19, 1967. Appellant's position is without merit. Even assuming that the last day of the period fell on Saturday, March 18, 1967, Citizens still would have had until Monday, March 20, 1967, to file since the Statutory Construction Act of 1972 clearly states that "[w]henever the last day of any such period shall fall on *Saturday or Sunday,* . . . such day shall be omitted from the computation." 1 Pa.S. § 1908.

■ As noted earlier, in order for Citizens to perfect its security interest it was necessary that it file a financing statement with the Prothonotary of Allegheny County as well as with the Secretary of the Commonwealth in Harrisburg. While Citizens filed its financing statement with the Secretary of the Commonwealth on March 20, 1962, it did not file its financing statement in Allegheny County until March 16, 1967. The Uniform Commercial Code does not, however, set forth any time period within which a financing statement must be filed in order to perfect a security interest. The comment to Section 9–402, however, is clear that a financing statement may be filed "before the security interest attaches or thereafter."

Therefore, the trial court correctly held that since the original financing statement was still effective, Citizens acquired a perfected security interest when it filed its financing statement in Allegheny County on March 16, 1967. Accordingly, when the continuation statement was filed with the Secretary of the Commonwealth on March

20, 1967, it continued Citizens' perfected security interest and preserved its priority position.

Appellant presents several arguments in opposition to the trial court's holding that Citizens' security interest became perfected on March 16, 1967. Appellant first contends that Citizens should be precluded from asserting a perfected security interest because its failure to file a financing statement in Allegheny County for nearly five years violated the mandates of Section 1–203 which provides that "every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." Appellant's argument, however, overlooks the fact that the Uniform Commercial Code does not impose a duty upon a secured creditor to perfect his security interest, nor does it impose any time period within which perfection must be accomplished. The decision to acquire a priority position by perfection is in the sole discretion of the secured creditor.

Appellant next contends that the financing statement which was filed in Allegheny County in 1967 indicated the existence of a security interest in only the *then* existing accounts receivable, inventory, and proceeds, and therefore did not provide adequate notice to potential Green Hills' creditors of Citizens' security interest in pre-1967 accounts receivable, inventory, and proceeds. In considering this argument, it must first be noted that appellant does not claim that any creditor was actually misled by the alleged defective description. The description of collateral as set forth in the 1967 financing statement was as follows: "All accounts receivable and inventory including proceeds both present and future *but not limited to* proceeds from inventory and receivables both present and future." (Emphasis added.) The description of collateral in a financing statement need not be specific or exact as long as it *reasonably* identifies the type of property in which a security interest has attached. Sections 9–110 and 9–402(1). It is sufficient if

it provides enough information to put a person *on notice* of the existence of a security interest in a particular type of property so that further inquiry can be made about the property subject to the security interest. The comment to Section 9–402 states:

"What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure. Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of the series of transactions in a continuing arrangement where the collateral changes from day to day."

Under Section 9–402(5) a financing statement is sufficient if it is not "seriously misleading." On March 16, 1967, financing statements were on file in Harrisburg and in Allegheny County. Both statements gave sufficient *notice* that a security interest existed in certain collateral and the proceeds therefrom. Further inquiry by any interested person would have readily revealed that the security interest attached in 1962 and not in 1967.

Appellant next contends that the 1966 amendment to the original security agreement constituted a constructive fraud upon other creditors. Appellant argues that creditors were entitled to notice of additional collateral and that the secured transaction had been made subject to an enlarged lending program.

As to the additional secured collateral, the trial court found and the appellant does not dispute that the additional collateral enumerated in the 1966 amendment was actually traceable as proceeds of the collateral listed in the original 1962 security agreement. Such being the case, Citizens already possessed a security interest in the additional collateral when it agreed to the amendment in 1966. This security interest became perfected when Citizens filed its financing statement covering the original collateral in Allegheny County in 1967. Thus, there was no necessity to file an additional or an amended financing statement to perfect the security interest in the collateral listed in the 1966 amendment.

The fact that the 1966 amendment increased the amount of indebtedness to which the original collateral was subject was in no way prejudicial to the interests of other Green Hills creditors. Article 9, as previously noted, only requires that creditors be given notice of a perfected security interest in described collateral of the debtor. It does not require that creditors be given notice of the extent of the debtor's financial obligation to its secured creditor. Section 9–402(1). We must therefore conclude that Citizens was under no duty to give notice of the 1966 amendment and that consequently its failure to do so cannot be construed as a constructive fraud upon other creditors.

Appellant next contends that since the Union National Bank of Pittsburgh was not a party to the original security agreement, or to the 1966 amendment, and since it did not file or join in the filing of any financing statements or continuation statement, it never even acquired the status of a creditor of Green Hills much less that of a perfected security interest holder. Therefore, argues appellant, the Union National Bank of Pittsburgh was not entitled to any of the remedies available to a secured creditor under Article 9, nor was Citizens authorized to enforce any of its remedies in favor of the Union National Bank of Pittsburgh.

As appellant correctly states, the Union National Bank of Pittsburgh was never directly a creditor of Green Hills. The 1962 agreement and its amendment in 1966 list Citizens as the sole secured creditor and specifically provided that all payments were to be made to Citizens. Several days after the 1966 amendment was executed Citizens and Union National Bank of Pittsburgh entered into a Loan Participation Agreement wherein the Union National Bank of Pittsburgh agreed to participate in the revolving loans to Green Hills up to $175,000, and Citizens reduced its participation to $15,000. The amount of participation by the Union National Bank of Pittsburgh was subsequently increased to $205,000. The Union National Bank of Pittsburgh did not make any loans directly to Green Hills. Rather, the $205,000 was transferred to Citizens which in turn used the funds to make loans to Green Hills according to the terms of the 1962 credit agreement as amended. Nor did Green Hills, prior to default, ever make payment on its loans directly to the Union National Bank of Pittsburgh. Green Hills made all of its installment payments to its secured creditor, Citizens, which in turn distributed a proportionate share to the Union National Bank of Pittsburgh pursuant to the terms of the Loan Participation Agreement. Thus, the Union National Bank of Pittsburgh cannot be considered as a creditor of Green Hills since Green Hills had not received any value directly from that bank and was in no way financially obligated to it.

It does not follow, however, that Citizens was limited in the exercise of its Article 9 remedies to recovering only $15,000—the actual extent of Citizens' participation in the loan to Green Hills. The exact nature of the loan participation agreement between Citizens and the Union National Bank of Pittsburgh is not clear from the record. Citizens may have been obligated to the Union National Bank of Pittsburgh to the extent of Union's participation in the loan to Green Hills. If so, Citizens remained a creditor of Green Hills to the full extent of the

loan, but became the debtor of Union National Bank to the extent of Union's participation. As creditor of a secured creditor, the Union National Bank was not required to comply with any of the provisions of Article 9, nor was it entitled to exercise any of the remedies available to a secured creditor under the Code. When Green Hills defaulted, the possibility that the Union National Bank of Pittsburgh would recover its investment in Green Hills was wholly dependent upon the priority position of its debtor, Citizens.

The record reveals that when Green Hills defaulted in 1967 it was Citizens, and not the Union National Bank of Pittsburgh, which exercised its right under Section 9–503 to take possession of the collateral. Since the collateral constituted nearly all of the assets of Green Hills, Citizens assumed control of the business and continued operating it. During this time Citizens endeavored to dispose of the collateral in satisfaction of Green Hills' indebtedness to it. Section 9–504(1)(b). An accounting of Citizens' disposition of collateral and management of the company was provided to the trial court. The accounting indicates that while Citizens was in the possession of Green Hills, several payments were made directly to the Union National Bank of Pittsburgh by Green Hills. Appellant argues that those payments were improper because Citizens was not authorized to exercise its remedies in favor of noncreditors of Green Hills. This argument is also without merit. Citizens did not indiscriminately distribute the assets of Green Hills to strangers. Rather, it properly disposed of the collateral in an attempt to satisfy Green Hills' indebtedness to it. The fact that Citizens then used the proceeds of its recovery to make payments to its own creditor, Union National Bank of Pittsburgh, does not constitute a breach of authority by Citizens. While the preferable procedure may have been for Citizens to have had Green Hills make payment to it, and then for Citizens in turn

to make payment to Union National Bank of Pittsburgh, the error, if any, was merely a technical one because the payments were in fact credited to Green Hills' indebtedness to Citizens.

██ Moreover, even if Union National Bank's participation in the loan were considered a partial assignment from Citizens, the Code in Section 9–302(2) specifically provides that an assignment *does not* affect the validity of the perfected status of a security interest and that the fact of assignment need not be filed unless the assignor wishes to substitute the assignee as the secured party of record. In the present case, Citizens at all times remained the secured party of record. Assuming that the loan participation did constitute a partial assignment by Citizens, Citizens' role then became that of collecting agent for the Union National Bank of Pittsburgh. The creation of a principal-agent relationship between the two banks did not necessitate the filing of a financing statement by the Union National Bank of Pittsburgh in order to perfect Citizens' security interest. As we said in *Industrial Packaging Prod. Co. v. Fort Pitt Pack. Int.*, 399 Pa. 643, 648, 161 A.2d 19, 21 (1960):

"The Uniform Commercial Code does not require that the secured party as listed in such statement be a principal creditor and not an agent. In this case, apparently, the Provident Trust Company filed the financing statement as a principal creditor, but in 1957, it became the collecting agent for the Empire Commercial Corporation. Neither the Provident Trust Company nor Empire had any reason to believe that it would be necessary to file a second financing statement which would in all respects duplicate the 1955 statement with the exception that the Provident Trust Company would be listed as an agent for Empire. The purpose of filing this financing statement is to give notice to potential future creditors of the debtor or purchasers of the collateral. It makes no difference as

**64**

far as such notice is concerned whether the secured party listed in the filing statement is a principal or an agent, and no provision in the Uniform Commercial Code draws such a distinction."

Upon default of Green Hills, Citizens was certainly entitled to exercise its Article 9 remedies in favor of its principal, Union National Bank of Pittsburgh.

We must therefore conclude that regardless of whether the Union National Bank of Pittsburgh is considered the creditor or the assignee-principal of Citizens, it was not required to comply with any of the provisions of Article 9. We must also conclude that Citizens acquired a perfected security interest which entitled it to rights in the collateral superior to those of the receiver, and that it acted properly in exercising those rights.

We have reviewed other issues raised by appellant and have concluded that they are also without merit.

Decree affirmed. Each party to pay own costs.

ROBERTS and NIX, JJ., concur in the result.