345 A.2d 632

Lauretta ADAMS, Appellant,

v.

LIERKA CORPORATION, Appellee,

and

800–Lincoln Bar Corporation, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 21, 1974.

Decided Oct. 3, 1975.

Abraham J. Levinson, Philadelphia, for appellant.

Ronald Ervais, Becker, Fryman & Ervais, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

The appellant, Lauretta Adams, filed a complaint in equity against two corporate defendants, appellees here. The complaint alleged that the appellant was a creditor of one of the corporate defendants, 800–Lincoln Bar Corporation (Lincoln), at the time when, without consideration, Lincoln transferred all of its assets to the second defendant, Lierka Corporation (Lierka). The amount

alleged to be due the appellant, including interest, was $28,527.10. Claiming that the transfer was illegal, the appellant asked that it be declared null and void, that the transferee corporation, Lierka, be enjoined from disposing of or encumbering any of the transferred assets, that Lierka be declared a trustee of the transferred assets to the extent of the appellant's debt, and that the court grant such other relief as necessary to protect the appellant. Lincoln did not file an answer to the complaint but Lierka did. A trial followed but no findings of fact were made by the trial judge. Rather, the trial judge and the parties agreed that the parties would submit a stipulation of facts upon which the trial court would make a decision. After the filing of the stipulation, the trial court denied any relief to the appellant and dismissed appellant's complaint. Appellant's exceptions were dismissed. At the time of oral argument before the court en banc, however, it was agreed that one paragraph in the trial court's opinion was without factual foundation and was to be disregarded. That deletion is not relevant to this appeal.

In 1968 the appellant owned a hotel and restaurant business licensed to sell liquor and malt beverages. The business was located on real estate also owned by the appellant. In January of 1968, appellant sold both the business and the real estate to Lincoln for a total consideration of $33,000. Appellant received the sum of $10,000 and was to be paid the balance in installment payments over a period of years. The balance due was secured by a second mortgage given by Lincoln in favor of the appellant. The first mortgage on the real estate was held by Henrietta Silverstein and Libby Baumholtz who had made a loan to Lincoln in the amount of $9,700. The appellant, as well as Silverstein and Baumholtz, also received a bond and warrant evidencing the respective debts due from Lincoln. Lincoln soon experienced difficulty in making payments on both the first and second

mortgages. Silverstein and Baumholtz repeatedly demanded that appellant make installment payments to Lincoln on the first mortgage if appellant desired to protect her second mortgage. During this period of nonpayment, appellant became the president, treasurer, and director of Lincoln, and attempted to operate Lincoln profitably. For a period of time in 1969, Lincoln, while the appellant was serving as president, treasurer, and director, was able to make some payments to Silverstein and Baumholtz on the first mortgage. Lincoln made no payments to the appellant on the second mortgage either before, during, or after the time appellant served as president. In September of 1969, while appellant was still serving as president of Lincoln, Silverstein and Baumholtz foreclosed on the first mortgage and Lincoln's real estate was sold at a sheriff's sale. As a result of the sheriff's sale appellant's second mortgage on the real estate was divested. The sheriff's sale proceeds were not sufficient to pay the full amount owing to Silverstein and Baumholtz, and thus Lincoln was still indebted to them for $5,700. Since the proceeds from the sale of the real estate were insufficient to pay Silverstein and Baumholtz, the appellant, of course, received no proceeds from that sale. At this point, therefore, both the appellant and Silverstein and Baumholtz continued as creditors of Lincoln as evidenced by the bonds and warrants previously executed by Lincoln.

At some point in 1969 (the exact date is not clear from the stipulation of facts) the appellant relinquished her positions with Lincoln. Subsequently, in April of 1970, Silverstein and Baumholtz took control of Lincoln and began serving as its officers and directors. On November 5, 1970, about six months after Silverstein and Baumholtz took control, Lincoln transferred all of its assets to Lierka. At this time Lierka was a corporation controlled by Baumholtz as the sole shareholder, presi-

dent, and a director. About five months later, on April 6, 1971, appellant initiated this action.

Appellant's legal arguments are based on the claim that the appellant, as well as Silverstein and Baumholtz were on a par as general creditors of Lincoln corporation on November 5, 1970, the time when Lincoln transferred all of its assets to Lierka. Appellant contends here, as she did in the trial court (1) that the transfer was a fraudulent conveyance because the transfer rendered Lincoln insolvent and was made without a fair consideration. See Section 4 of the Uniform Fraudulent Conveyance Act, Act of May 21, 1921, P.L. 1045, No. 379 (39 P. S. § 354); (2) that the transfer was a fraudulent conveyance because the transfer was made without consideration between two corporations controlled by creditors with the intent to defraud other creditors of Lincoln, namely the appellant. See Section 7 of the Uniform Fraudulent Conveyance Act, *Id.* (39 P.S. § 357); and (3) that the transfer was a fraudulent conveyance because it did not comply with the law concerning bulk transfers. See Article 6 of the Uniform Commercial Code—Bulk Transfers, Act of April 6, 1953, P.L. 3, § 6–101, *as amended,* 12A P.S. § 6–101 et seq.

Appellant contends that if both appellant and Silverstein and Baumholtz were general creditors of Lincoln after the foreclosure and the sale of Lincoln's real estate, then Lincoln was required to comply with Article 6 of the Uniform Commercial Code (covering bulk transfers) and was also prohibited from making transfers in violation of the Uniform Fraudulent Conveyance Act. Neither the trial court nor appellees take issue with this argument. The appellees argue, and the trial court concluded, that Lincoln did not have to comply with the Uniform Fraudulent Conveyance Act or Article 6, when it transferred all of its assets to Lierka because Silverstein and Baumholtz were *secured creditors* of Lincoln.

The entire rationale of the trial court's opinion is based on a finding that the assets of Lincoln were sold by *secured creditors*. The trial court said:

".  .  . the fact is, however, that Mrs. Baumholtz and Mrs. Silverstein as holders of a first mortgage possessed a security interest for which they paid $9,700 and which interest had priority over the claim of the plaintiff.  .  .  ."

■ There is no basis in the stipulation of facts for the trial court's conclusion that the first mortgage which Silverstein and Baumholtz had on the Lincoln *real estate* also gave Silverstein and Baumholtz a perfected security interest *in the other assets* of Lincoln. That mortgage interest terminated at the time the real estate was sold at sheriff's sale, September, 1969. The agreed statement of facts is also silent as to the existence of any other perfected security agreement covering the assets transferred between the two corporations.

■ Appellants do not dispute that the mortgage of Silverstein and Baumholtz was prior in time and recording to appellant's mortgage. Item 27, in the agreed statement of facts, reads:

"Libby Baumholtz and Henrietta Silverstein had a claim as creditors of 800–Lincoln Bar which was prior in time and in recording to the claim of the plaintiff, Lauretta Adams."

Item 27, however, makes no mention of any security agreement or any perfected security interest held by Silverstein and Baumholtz in the other assets of Lincoln. The recording of a debt alone does not establish a perfected security interest in any assets of the debtor. Additional facts, which do not appear in the record before us, are necessary to establish the existence of a perfected security interest in such assets. *See* Article 9 of the Uniform Commercial Code. Act of April 6, 1953, P.

L. 3, § 9–101, *as amended*, (12A P.S. § 9–101) and *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 filed July 7, 1975.

Appellant does not contend, and did not contend in the trial court, that there was any impropriety in the mortgage foreclosure and the sale of the real estate which divested appellant's second mortgage on the real estate. The rationale behind almost all of appellant's exceptions before the court en banc was the assertion that, after the sheriff's sale of the real estate, Silverstein and Baumholtz were no more than general creditors of Lincoln, as was the appellant, and that no one had a perfected security interest in the *other assets* of Lincoln. The appellees have argued that they obtained a security interest in the assets of Lincoln when they loaned to Lincoln $9,700 and received their first mortgage. A first mortgage on real estate is a secured interest in real estate but it does not constitute any security interest in other assets of the debtor. As we said in *Rabe Estate*, 452 Pa. 212, 214, 304 A.2d 485, 487 (1973):

> "It is elementary law that a mortgagee has a lien on the realty which secures the mortgage debt . . . Beyond the mortgaged property, however, the mortgage does not constitute a lien and hence, as against other property, the mortgagee's status is that of a general creditor . . . Should the mortgagee choose to seek satisfaction of the obligation secured by the mortgage [against property other than the mortgaged property], he is regarded as asserting the rights of an unsecured, general contractor only. . . ."

For the resolution of this controversy it is essential to determine whether Silverstein and Baumholtz had a perfected security interest in those of Lincoln's assets which were transferred to Lierka in 1970, and whether the sale of Lincoln's assets was made pursuant to any such perfected security agreement.

The record here does not contain a sufficient stipulation of facts for us to be able to make such a determination, and we cannot accept the conclusions of the trial court based, as they were, on a finding of fact not contained in the stipulation.

The stipulation stated that the matter was to be adjudicated by the trial court "upon the following agreed statement of facts, subject to additional testimony which may be requested by either party, or the court, as to matters not covered." In view of the above agreement, it is necessary and proper for the trial court to request either an agreement as to additional essential facts or, if such an agreement is not possible, to make findings of fact based on evidence. The matter must therefore be remanded to the trial court.

The trial court also concluded that the appellant was guilty of laches because she made no attempt to protect herself after the mortgage foreclosure *on the real estate* in 1969. Appellant however has never complained about the foreclosure on the real estate. Appellant had no reason for her present complaint until Lincoln transferred all of its assets to Lierka on November 5, 1970. Appellant initiated this action on April 6, 1971, five months later. Moreover, the record is silent as to when the appellant first learned of the transfer of assets from Lincoln to Lierka. Under these circumstances there was no basis for the trial court's conclusion that the appellant was guilty of laches.

Lastly, appellees argue that the appellant's rights were affected, in some way not clearly specified in appellees' brief, because appellant served as president and operated Lincoln for a period in 1969. The appellant, however, as an individual is a legal person separate from Lincoln Corporation. Appellant ran Lincoln for awhile in an attempt to make it profitable. Although some pay-

ments were made on the first mortgage to Silverstein and Baumholtz, she did not succeed. There is no claim that appellant mismanaged Lincoln in any way. After appellant's unsuccessful attempt to profitably operate Lincoln, the appellees took over and attempted the same thing. We fail to see how her rights as a creditor, were affected by this attempt, and the appellees have not explained their contention. Lincoln Corporation is an entity separate from the appellant as an individual, and as a creditor of Lincoln, and also separate from Silverstein and Baumholtz as individuals and as creditors of Lincoln.

The decree of the lower court is vacated and the matter remanded for further proceedings consistent with this opinion. Each party to pay own costs.

POMEROY, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a dissenting opinion.

JONES, C. J., dissents.

ROBERTS, Justice (dissenting).

I dissent. I would reverse and remand to the hearing court with directions to enter an appropriate decree setting aside the transfer of the assets from the 800–Lincoln Bar Corporation to the Lierka Corporation.