654 F.2d 1245
 31 UCC Rep.Serv. 801
 THORP COMMERCIAL CORPORATION, Appellee,
v.
NORTHGATE INDUSTRIES, INC., Roy E. Benson, Gerald Benson,
Marsha Benson, Paul Gallick, Franklin National
Bank of Minneapolis, Appellant.
Jensen Contractors, Inc., and David DeZiel.
 No. 80-1637.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1981.
Decided July 21, 1981.
 
 Robert G. Share (argued), Levitt, Palmer, Bowen, Rotman & Share, Minneapolis, Minn., for appellant.
 Edward J. Heiser, Jr. (argued), Michael T. Hart, Whyte & Hirschboeck, S. C., Milwaukee, Wis., for appellee.
 Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Franklin National Bank (the Bank) appeals from an order of the District Court for the District of Minnesota[1] granting summary judgment to Thorp Commercial Corp. (Thorp) dismissing the Bank's counterclaim against Thorp for conversion. The conversion counterclaim arose out of Thorp's collection of proceeds from accounts receivable of a third party (the debtor, Northgate Industries, Inc.) who was indebted to both the Bank and Thorp. The Bank argues that the district court erred in holding that the Bank's claim to a security interest in certain of the debtor's accounts receivable failed as against Thorp because the Bank had not filed an adequate financing statement before Thorp perfected its own security interest in the accounts receivable. For the reasons discussed below, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.
 
 
 2
 At issue in this appeal are security interests taken by both the Bank and Thorp in accounts receivable of a debtor, Northgate Industries, Inc.,[2] a firm engaged in repair of structures damaged by fires or other casualties. On May 13, 1971, the Bank lent the debtor $6,500 and under a security agreement took a security interest in collateral including all of the debtor's accounts receivable and proceeds. The security agreement indicated that ongoing financing arrangements were contemplated, because the security agreement purported to secure payment of all indebtedness existing or to be created afterward. The Bank duly filed with the Minnesota Secretary of State on May 21, 1971, a financing statement describing the collateral as "assignment accounts receivable" and "proceeds." On July 21, 1971, the Bank lent the debtor an additional sum of over $8,000; by May 4, 1972, the debtor had fully repaid both loans to the Bank, but the financing statement was not modified or withdrawn.
 
 
 3
 Meanwhile, on April 2, 1972, Thorp set up its financing arrangement with the debtor by entering into a security agreement covering certain collateral, including the debtor's accounts receivable and specifying coverage of both existing accounts and accounts which would be subsequently acquired. Thorp filed a financing statement identical to its security agreement two days later.
 
 
 4
 Subsequently, both the Bank and Thorp made further loans to the debtor. Prior to the business failure of the debtor, Thorp collected about $685,000 in repayment of its advances and apparently was owed as much as $100,000 more by the debtor; the Bank seems to have advanced a smaller amount, but as much as $60,000 of the debtor's indebtedness to the Bank appears to remain unpaid. On two occasions the Bank filed additional financing statements, one in July, 1972, describing the collateral in relevant part as "Assignment A/C Rec," and one in February, 1973, describing the collateral in relevant part as "All accounts receivable now or hereinafter acquired." The Bank, however, never withdrew or modified its 1971 financing statement.
 
 
 5
 The present case is part of litigation that arose out of the failure of the debtor's business. At the time of the failure the debtor owed substantial sums to both the Bank and Thorp. Thorp commenced a lawsuit against the Bank and others alleging common law fraud and violations of federal securities laws arising in part out of alleged improper relationships between officers of the Bank and the debtor.[3] The Bank filed a counterclaim against Thorp for conversion. The counterclaim is based on a theory that Thorp had converted funds it received from the debtor, because the funds belonged to the Bank, which claimed a prior perfected security interest in the proceeds of the debtor's accounts receivable by virtue of its 1971 agreement and financing statement.
 
 
 6
 The district court dismissed the Bank's counterclaim because in its view the 1971 financing statement covered only accounts receivable in existence at the time and not accounts receivable subsequently created. The Bank has not disputed that Thorp also had a perfected security interest in the debtor's accounts receivable on the basis of Thorp's April, 1972, security agreement and financing statement securing collateral including the debtor's accounts. Under Article 9 of the Uniform Commercial Code (UCC), which Minnesota has adopted, Minn.Stat.Ann. § 336.9-101 et seq. (West 1966 & Supp. 1981) (all statutory references are to Minn.Stat.Ann.), where two creditors hold security interests in the same collateral of the kind involved in this case (a significant portion of the debtor's accounts receivable), the creditor which first perfects its security interest by filing a financing statement has the prior interest, regardless of the time of the creation of the security agreement. § 336.9-312(5). Thorp contended, and the district court agreed, that the 1971 financing statement filed by the Bank did not cover any accounts receivable coming into existence subsequent to the date the statement was filed. Thorp's April, 1972, financing statement would then be the earliest one covering the debtor's accounts receivable; therefore, Thorp would have the prior interest in the accounts and the Bank's conversion claim would fail.[4] The district court certified its decision as a final order under Fed.R.Civ.P. 54(b), and this appeal followed.
 
 
 7
 The UCC provisions governing secured transactions in the financing of accounts receivable set up a system designed to facilitate arrangements by which a debtor may obtain ongoing financing by using a significant portion of its accounts receivable as collateral. The creditor's security interest in the accounts receivable "attaches" when the debtor signs a valid security agreement covering the collateral, § 336.9-203(1); the security interest is "perfected" when the creditor files a financing statement giving notice of the security interest, § 336.9-302. Cf. § 336.9-302(1)(e) (no financing statement required to perfect a security interest in an assignment of less than a significant portion of the debtor's outstanding accounts). Both the security agreement and financing statement may cover ongoing financing arrangements; once such an ongoing security arrangement attaches and is perfected, the creditor's interest in the accounts may be secured as collateral for future as well as past advances, see Thorp Finance Corp. v. Ken Hodgins & Sons, 73 Mich.App. 428, 251 N.W.2d 614 (1977), despite the rollover process of closing of the debtor's existing accounts and opening of new accounts that were not in existence at the time the arrangement was set up.[5] § 336.9-204; see Valley National Bank v. Flagstaff Dairy, 116 Ariz. 513, 570 P.2d 200 (Ct.App.1977).
 
 
 8
 The security agreement and financing statement have different functions under the UCC. The security agreement defines what the collateral is so that, if necessary, the creditor can identify and claim it, and the debtor or other interested parties can limit the creditor's rights in the collateral given as security. The security agreement must therefore describe the collateral. § 336.9-203(1). The financing statement, on the other hand, serves the purpose of putting subsequent creditors on notice that the debtor's property is encumbered. The description of collateral in the financing statement does not function to identify the collateral and define property which the creditor may claim, but rather to warn other subsequent creditors of the prior interest. The financing statement, which limits the prior creditor's rights vis-a-vis subsequent creditors, must therefore contain a description only of the type of collateral. § 336.9-402(1). See James Talcott, Inc. v. Franklin National Bank, 292 Minn. 277, 194 N.W.2d 775, 782 & n.3 (1972). One corollary to this principle is that, as between two creditors with security interests in the accounts receivable of the same debtor, the first to provide notice by filing a financing statement has priority. §§ 336.9-302(1), 9-303, 9-312(5); James Talcott, Inc. v. Franklin National Bank, supra, 194 N.W.2d at 785-86. See also Allis-Chalmers Credit Corp. v. Cheney Investment, Inc., 227 Kan. 4, 605 P.2d 525 (1980). Moreover, the financing statement may be filed before the security agreement is made without affecting the first to file rule of priority. § 336.9-312(5). See James Talcott, Inc. v. Franklin National Bank, supra, 194 N.W.2d at 784-85.
 
 
 9
 Because the purpose of the financing statement is to warn subsequent creditors rather than to identify the collateral, the UCC makes clear that the collateral need not be specified in the financing statement but may be described by "type."[6] § 336.9-402(1). See generally Scult, Accounts Receivable Financing: Operational Patterns under the Uniform Commercial Code, 11 Ariz.L.Rev. 1, 12-13 (1969). The UCC commentary makes clear that it is ordinarily not expected that the financing statement itself will tell a subsequent creditor what collateral is already covered by a prior security interest. "The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry will be necessary to disclose the complete state of affairs." § 336.9-402, official comment 2; see James Talcott, Inc. v. Franklin National Bank, supra, 194 N.W.2d at 783. See also First National Bank & Trust Co. v. Atlas Credit Corp., 417 F.2d 1081 (10th Cir. 1969); Bramble Transportation, Inc. v. Sam Senter Sales, Inc., 294 A.2d 97 (Del.Super.Ct.1971), aff'd, 294 A.2d 104 (Del.1972). See generally J. White & R. Summers, Uniform Commercial Code § 23-16, at 961-64 (2d ed. 1980); Annot., 100 A.L.R.3d 10, § 13 (1980) (collecting cases).
 
 
 10
 The district court failed to focus upon whether the financing statement contained an adequate description of the type of collateral so that a subsequent creditor would reasonably make further inquiry; instead, the district court considered whether the financing statement adequately described the collateral itself. 490 F.Supp. at 201-03. The district court found great significance in the word "assignment" and reasoned that "assignment accounts" could only refer to specific accounts listed in the security agreement or actually transferred in some other way prior to the filing of the financing statement. Id. at 202. In the district court's view, the words "assignment accounts receivable" would not be adequate to cover future accounts receivable under § 336.9-110, which provides, "(A)ny description of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described."
 
 
 11
 But, as noted above, the UCC requires a description of only the type of collateral, not the collateral itself, in the financing statement to perfect a security interest. Under § 336.9-110, a description of the collateral in a financing statement "is sufficient whether or not it is specific if it reasonably identifies" the type of collateral. The drafters of the UCC contemplated that the financing statement would need to give only enough description of the collateral to induce a subsequent creditor to make further inquiries. § 336.9-402, official comment 2. The description "reasonably identifies" the type of collateral, therefore, if it would reasonably induce further inquiry.[7]
 
 
 12
 The district court's approach, however, has support under a line of cases in which courts have largely ignored the function of a financing statement to suggest further inquiry about the collateral. A split in authority exists in this area. For example, one court has held that a financing statement describing the collateral as "accounts receivable" did not cover accounts created after the financing statement was filed, reasoning that some subsequent creditors may have been misled by the failure to specify subsequently created accounts and that the prior creditor could easily have made the financing statement clearer. In re Middle Atlantic Stud Welding Co., 503 F.2d 1133 (3d Cir. 1974). Other courts have, however, considered financing statements describing the collateral as "accounts receivable" or "accounts" as adequate to cover accounts created subsequent to the filing of the financing statement. Continental Oil Co. v. Citizens Trust & Savings Bank, 57 Mich.App. 1, 225 N.W.2d 209 (1974), aff'd, 397 Mich. 203, 244 N.W.2d 243 (1976); Heights v. Citizens National Bank, 463 Pa. 48, 342 A.2d 738 (1975) ("accounts"); South County Sand & Gravel Co. v. Bituminous Pavers Co., 106 R.I. 178, 256 A.2d 514 (1969) ("accounts receivable").[8] See generally Annot., 100 A.L.R.3d 10, supra, §§ 21, 23. Cf. In re Laminated Veneers Co., 471 F.2d 1124 (2d Cir. 1973) (court divided over whether description of collateral in financing statement as "equipment" is adequate to cover automobile).
 
 
 13
 A substantial theoretical difference seems to underlie these inconsistent results. Under one view a financing statement adequately covers collateral if it reasonably puts a subsequent creditor on notice of a need for further inquiry about the possibility that the collateral is subject to a prior security interest. The reasonableness of the notice would depend on balancing such factors as the difficulty of making further inquiry against factors such as the likelihood the type of collateral described in the financing statement might include the collateral which interests the subsequent creditor.
 
 
 14
 Under the second view of Article 9, a financing statement suffices to perfect a security interest in collateral if the financing statement itself contains a reasonable description of the collateral. The determination of reasonableness involves balancing such factors as the ease with which the prior creditor could make the description of the collateral more precise or clearer against factors like the danger that a subsequent creditor might fail to recognize that the collateral is covered. E. g., In re Middle Atlantic Stud Welding Co., supra, 503 F.2d 1133 (explicitly weighing these factors).
 
 
 15
 The district court in deciding the instant case relied upon an Oklahoma case involving similar facts which adopted this second view of financing statements. In Georgia-Pacific Corp. v. Lumber Products Corp., 590 P.2d 661 (Okla.1979), a financing statement covering "assignment accounts receivable" was held inadequate to perfect a security interest in accounts receivable other than those specifically assigned by the debtor to the secured party.[9] The court in Georgia-Pacific found that the words "assignment accounts receivable" were reasonably descriptive of only an assignment of specific listed accounts receivable and held that the words did not "reasonably identify the collateral as all accounts receivable." Id. at 664. Although the opinion does not elaborate on the factors which determine whether the description reasonably identifies the collateral, the Oklahoma court did not consider whether it would have been reasonable for subsequent creditors to make further inquiries about what the financing statement covered, but rather considered what was described in the financing statement itself.
 
 
 16
 The approach of the Oklahoma court in the Georgia-Pacific case and other courts which requires that the financing statement by its own terms describe the collateral cannot be supported under Article 9. Article 9 simply does not require that the financing statement describe anything more than the type of collateral and leaves to interested parties the burden of seeking more information. Ultimately, such a requirement for a description of the collateral itself in a financing statement would eliminate the distinction between the financing statement and the security agreement, because the only way for a creditor to make sure that the financing statement describes the collateral would be to use the same description which identified the collateral in the security agreement setting up the security interest. Indeed, the district court suggested in the instant case that the "optimum practice" is for the creditor "to describe the collateral in the financing statement exactly as it appears in the security agreement." 490 F.Supp. at 203 n.5. Such a requirement was rejected by the drafters of the UCC who specifically commented,
 
 
 17
 the financing statement is effective to encompass transactions under a security agreement not in existence and not contemplated at the time the notice was filed, if the description of collateral in the financing statement is broad enough to encompass them. Similarly, the financing statement is valid to cover after-acquired property ... whether or not mentioned in the financing statement.
 
 
 18
 U.C.C. § 9-402, official comment 2 (Official Draft 1972). One central purpose of allowing a broad financing statement is to allow a creditor that envisions an ongoing financing arrangement to protect the priority of its interest by filing at an early date a notice to third parties which will cover the existing arrangement and broad range of potential future modifications. By requiring a description of the collateral in the financing statement itself, courts would destroy this flexibility.[10]
 
 
 19
 The Minnesota courts have not addressed the precise question before us. In a case involving similar questions, however, the state supreme court explained,
 
 
 20
 (o)nce a financing statement is on file describing property by type, the entire world is warned, not only that the secured party may already have a security interest in property of that type ..., but that it may later acquire a perfected security interest in property of the same type acquired by the debtor in the future.
 
 
 21
 ....
 
 
 22
 ... The code very simply and briefly provides for a notice-filing procedure with a minimum of information required to be publicized in a filed financing statement. All that is required is a minimal description, and it may be by type or kind. The statement need not necessarily contain detail as to collateral, nor any statement of quantity, size, description or specifications, or serial numbers. No preciseness is required with respect to whether the collateral exists at the time of filing or is to be acquired thereafter ....
 
 
 23
 James Talcott, Inc. v. Franklin National Bank, supra, 194 N.W.2d at 783, 786. Minnesota thus appears to be one of the jurisdictions which has adopted the first view discussed above, that a financing statement covers the collateral in question if it merely makes it reasonable for a subsequent creditor interested in the collateral to make further inquiries.
 
 
 24
 The Minnesota Supreme Court's reasoning seems fundamentally inconsistent with the Oklahoma court's decision in Georgia-Pacific Corp. v. Lumber Products Co., supra, 590 P.2d 661. If the financing statement covers not only existing security interests in the type of collateral described but also security interests which may arise in the future, then a financing statement covering "assignment accounts receivable" would cover any assignment of the debtor's accounts receivable that might exist or be made in the future. The word "assignment" might mean a specific assignment of named accounts receivable but is broad enough to refer to a general assignment of all the debtor's accounts receivable, including those acquired in the future. A subsequent creditor, faced with notice that a security interest may exist or be created in any or all of the debtor's accounts, would certainly have reasonable grounds for inquiring further before relying on any of the debtor's accounts for collateral. We conclude that under Minnesota law applying the UCC the financing statement covering "assignment accounts receivable" was adequate to perfect the Bank's security interest in accounts acquired subsequent to the filing of the financing statement, whether or not there was a specific assignment of particular accounts.
 
 
 25
 In reaching this conclusion we do not overlook the district court's concern that a creditor should not benefit from use of a misleading or overreaching financing statement. 490 F.Supp. at 203. The notice filing concept has a primary purpose of facilitating ongoing financing arrangements not merely by the first creditor on the scene but also subsequent creditors. The requirement for filing a financing statement provides notice, at least theoretically, to subsequent creditors of what assets may already be encumbered by prior creditors. The financing statement would not provide notice where the description of collateral is misleading, for example, if the description were simply wrong or if the description seemingly would not cover the collateral but contained coverage under some hidden ambiguity that could not be considered reasonable notice. See, e. g., In re California Pump & Manufacturing Co., 588 F.2d 717 (9th Cir. 1978). Cf. § 336.9-402(8) (financing statement is adequate despite minor errors which are not seriously misleading). Even assuming the words "assignment accounts receivable" could be interpreted narrowly to refer to a single assignment of specific accounts receivable, the words also have an obvious alternative broad meaning; in the present case notice filing has served its purpose of alerting subsequent creditors to the need for further inquiry. The UCC puts the burden on the subsequent creditor to seek clarification.[11]
 
 
 26
 Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.[12]
 
 
 
 [1]
 The district court's opinion is reported at 490 F.Supp. 197 (D.Minn.1980). The parties filed a Stipulation of Facts in this matter
 
 
 [2]
 Formerly known as Jensen Contractors, Inc. and Mart-Son, Inc
 
 
 [3]
 The district court dismissed the federal securities law claims in 1974. The district court still had diversity jurisdiction over the common law claims under undisputed allegations of the parties
 
 
 [4]
 Thorp also presented other defenses to the Bank's counterclaim; the district court found it unnecessary to consider these additional defenses. Likewise on this appeal we consider only the narrow issue of the sufficiency of the Bank's 1971 financing statement to perfect a security interest in after acquired accounts. 490 F.Supp. at 200-01 & n.2
 
 
 [5]
 Thorp does not claim that the Bank's filing of subsequent financing statements after 1971 directly affected the validity of the 1971 financing statement to perfect a security interest in accounts receivable. See Minn.Stat.Ann. § 336.9-303(2) (West 1966 & Supp.1981) (all statutory references are to Minn.Stat.Ann.). Thorp argues, however, that the Bank did not intend to perfect a security interest in future accounts receivable in 1971, because the explicit coverage of future accounts in the Bank's 1973 financing statement shows that the Bank would have explicitly listed future accounts in 1971 if the Bank meant to take a security interest in future accounts. The standard for evaluating a financing statement is the notice given to subsequent creditors, however, and a financing statement need not describe the collateral, § 336.9-402(1), discussed infra. The mere fact that the Bank failed to describe the collateral in the 1971 financing statement is not determinative of the notice that statement gives a future creditor to inquire as to the extent of collateral covered
 
 
 [6]
 The creditor does have the option of describing the collateral by item in the financing statement, § 336.9-402(1), and therefore perfecting a security interest only in the specific items described. The apparent purpose would be to allow creditors the option to avoid filing a broad financing statement, covering collateral in which no security interest was actually claimed or contemplated as part of ongoing financing arrangements. See 1 G. Gilmore, Security Interests in Personal Property § 15.3, at 479-80 (1965). The financing statement in this case did not list specific accounts, however, but rather a type of collateral, "assignment accounts."
 
 
 [7]
 One exception to this principle appears to arise in some cases where the financing statement fails to describe the collateral even by type, but instead simply designates all of the debtor's property or uses some other vague or all-encompassing term. Some courts have held such a financing statement inadequate, because Article 9, § 402(1) of the UCC specifically requires that the financing statement describe the collateral either by type or item. Other courts have, however, held such descriptions adequate to perfect a security interest in all of the debtor's property. Compare In re JCM Coop., Inc., 8 U.C.C. Rep. 247 (W.D.Mich.Bankr.1970) (Michigan law; financing statement covering "all ... personal property ..." sufficient to perfect security interest in inventory and proceeds), with In re Fuqua, 461 F.2d 1186 (10th Cir. 1972) (Kansas law; financing statement covering "all personal property" insufficient to perfect security interest in livestock and equipment). See generally B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code P 2.9(5)(c), at 2-44 & nn.169 & 170 (1980). See also note 10 infra
 
 
 [8]
 In Heights v. Citizens Nat'l Bank, 463 Pa. 48, 342 A.2d 738, 743 (1975), the financing statement covered "All accounts receivable ... including proceeds both present and future but not limited to proceeds from inventory and receivables both present and future." The court could have read the financing statement to cover explicitly future receivables, but it correctly refrained from doing so, holding instead that the collateral description simply was sufficient to put subsequent creditors on notice that further inquiries should be made concerning the debtor's accounts. The court did not need to decide what was explicitly covered by the financing statement
 
 
 [9]
 The Oklahoma court apparently did view the words "assignment accounts receivable" adequate to cover assignments of specific accounts receivable made subsequent to the date of filing of the financing statement. Georgia-Pacific is therefore not technically authority for the proposition that the words "assignment accounts receivable" fail to cover after acquired accounts. Nevertheless, the approach of the Oklahoma court in limiting the coverage of the financing statement to collateral described technically by the financing statement, like the approach of the district court in the present case, does not focus on the notice of need for further inquiry given by the financing statement. In that regard, the Oklahoma court's opinion is consistent with and supports the decision reached by the district court in this case
 
 
 [10]
 Another problem with requiring a description of the collateral in the financing statement is the possibility that a debtor might want to enter into a security agreement including information the debtor might not want to put on the public record for competitors to see. Cf. § 336.9-208 & official comment 2 (list of collateral available only to debtor so that casual inquirers and competitors cannot obtain it). A vague financing statement referring generally to the type of collateral can obviate this problem. The interest of a subsequent creditor can be protected in such a case from the danger that the prior financing statement will enable the prior creditor to obtain a superior security interest by a subordination agreement from the prior creditor. See 1 G. Gilmore, Security Interests in Personal Property, supra, § 15.3, at 479-80 & nn.10 & 12
 
 
 [11]
 There is no question in this case of "overreaching" by the subsequent creditor, a problem which has been recognized by some commentators especially in the financing of purchases of consumer goods where the creditor may draw the financing statement much broader than the actual collateral taken and thereby limit the debtor's access to further credit or give the first creditor unfair leverage over subsequent creditors. See, e. g., In re Lehner, 303 F.Supp. 317 (D.Colo.1969), aff'd, 427 F.2d 357 (10th Cir. 1970), noted in 48 Den.L.J. 146 (1971). See also James Talcott, Inc. v. Franklin Nat'l Bank, 292 Minn. 277, 194 N.W.2d 775, 782 n.3 (1972). See generally R. Henson, Secured Transactions Under the Uniform Commercial Code § 4.7, at 73 (2d ed. 1979)
 
 
 [12]
 See generally 6, Part 2 Moore's Federal Practice P 56.27(1), (2) (2d ed. 1980)