**In re Andrew L. STOFKO, Jr. and Catherine P. Stofko i/a/t/d/b/a West End Electric Supply, Debtors.**

**WESTINGHOUSE CREDIT CORPORATION, Plaintiff,**

v.

**Stephen L. DUGAS, Trustee and Andrew L. Stofko, Jr. and Catherine P. Stofko i/a/t/d/b/a West End Electric Supply, Defendants.**

**Bankruptcy No. 80–1585.
Adv. No. 81–0086.**

United States Bankruptcy Court,
W. D. Pennsylvania.

Dec. 23, 1981.

Christopher A. Beck, Pittsburgh, Pa., for debtors/defendants.

Donald R. Calaiaro, Pittsburgh, Pa., trustee.

David Abrams, Monroeville, Pa., for plaintiff.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This case was commenced by the filing of a Petition by the Debtors under Chapter 13 of the Bankruptcy Code on October 1, 1980. This adversary action comes before the Court on a Complaint by Westinghouse Credit Corporation (hereinafter "Westinghouse" or the "Plaintiff") asking for relief from the automatic stay under Section 362 of the Bankruptcy Code so that it could foreclose on collateral in which it claims to have a security interest. An Answer was filed by the Debtors alleging that while Westinghouse did have a security interest in some of the Debtors' collateral, that had been repossessed in July of 1980. Further, the Debtors answered that Westinghouse had failed to perfect a security interest in any collateral that remained in the Debtors' possession. The Trustee did not file an Answer.

The basis of the Debtors' claim that Westinghouse failed to perfect its security interest is that Westinghouse's financing statement does not contain a description of the disputed collateral. Westinghouse and the Debtors entered into a security agreement (UCC Security Agreement—Inventory) which describes the disputed collateral at paragraph 4. The disputed collateral is "all of the Dealer's present and future inventory."

The Plaintiff's position is that while the standard form—Form UCC/1—Financing Statement does not contain the words "all of the Dealer's present and future inventory," that the Financing Statement which shows the Plaintiff's security interest at paragraph 5 would put third parties on notice that Westinghouse would have a security interest in all inventory.

Since the crux of the dispute is the scope of the language involved, the pertinent language from the Security Agreement and the Financing Statement is printed below.

*Security Agreement*

3. COLLATERAL. As security for all present and future obligations to WCC, Dealer grants WCC a continuing security interest in inventory against which WCC has advanced, all replacements and substitutions and proceeds of such inventory, and all returned and repossessed goods. The collateral under this agreement described by type consists of refrigerators, freezers, dish and clothes washers and dryers, ranges, water heaters and coolers, garbage disposers, vacuum cleaners, furniture, television sets, radios, phonographs, tape recorders, speakers, amplifiers and any combination thereof, air conditioners, furnaces, humidifiers, dehumidifiers, air cleaners, heat pumps, organs, pianos, guitars, band instruments, power mowers, tillers and other power lawn tools, snow blowers, tractors, snow vehicles, all terrain vehicles, boats, boat motors and boat trailers, camper bodies, camping trailers, travel trailers, motor homes, mobile homes and all furniture, appliances, floor coverings and fixtures

contained therein including without limitation the types of property listed above.

4. ADDITIONAL COLLATERAL. As additional collateral, Dealer assigns to WCC all present and future credits payable by those who sell to Dealer inventory financed by WCC and rental payments from those who lease inventory from Dealer. Dealer authorizes each lessee and seller to pay these directly to WCC. Also as additional collateral, Dealer grants WCC a security interest in all of Dealer's present and future inventory.

*Financing Statement*

5. This Financing Statement covers the following types (or items) of property: Refrigerators, freezers, dish and clothes washers and dryers, ranges, water heaters and coolers, garbage disposers, vacuum cleaners, furniture, television sets, radios, phonographs, tape recorders, speakers, amplifiers and any combination thereof, air conditioners, furnaces, humidifiers, dehumidifiers, air cleaners, heat pumps, organs, pianos, guitars, band instruments, power motors, tillers and other power lawn tools, snow blowers, tractors, snow vehicles, boats, outboard motors and boat trailers, camper bodies, camping trailers, travel trailers and mobile homes and all furniture, appliances, floor coverings and fixtures contained therein. Accounts, contract rights and general intangibles arising from purchase of the foregoing items by debtor when such items have been financed by Westinghouse Credit Corporation.

## DISCUSSION

Under the Uniform Commercial Code, if Westinghouse has not perfected its interest in the disputed collateral, it becomes an unsecured creditor as of the date of the filing of the bankruptcy petition when the Trustee becomes a perfect lien creditor without knowledge. See 11 U.S.C. § 544(a) and 13 Pa.C.S.A. § 9301(a)(2). In this case the Debtor has asserted the defense of non-perfection to Westinghouse's Complaint for Relief from Stay. The Bankruptcy Code does not provide for the Debtors to attack Westinghouse's security in their own right. Therefore, if Westinghouse is found to be unsecured, the property would become property of the estate to be administered by the Trustee, except to the extent it is declared exempt by the Debtors. See *In re Carter*, 4 B.R. 692, 1 CBC 381 (Bkrtcy.D. Colo.1980).

In order for a security interest to be valid under the Uniform Commercial Code, both attachment and perfection must occur. A security interest or attachment arises upon the last of three events: (1) when a creditor gives value; (2) when a creditor and debtor enter into an agreement for the debtor to give a security interest to the creditor; and (3) when the debtor has interests in the property being secured. Perfection is accomplished upon the filing of a financing statement as provided in Section 9402 (13 Pa.C.S.A. § 9402). It is immaterial which of the two steps, attachment or perfection, occur first. *In re Southwest Pennsylvania Natural Resources, Inc.*, 11 B.R. 900 (BC W.D.Pa.1981). The financing statement serves as notice to third parties.

The notice function of the financing statement is stated in the official comments to Section 9402 as follows:

2. This section adopts the system of a notice filing which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before a security interest or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make complete disclosure. Notice filing

has proved to be of great use in financing transaction involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day. Where other types of collateral are involved, the alternative procedure of filing a signed copy of the security agreement may prove to be the simplest solution.

See also *Industrial Packaging Products Co. v. Fort Pitt Packaging International, Inc.*, 399 Pa. 643, 161 A.2d 19, 21 (1960). Does the security agreement filed by Westinghouse give sufficient notice that Westinghouse had a security interest in all of the present and future inventory of the Debtors?

Westinghouse cites the Court to *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975), for the proposition that:

[A financing statement] is sufficient if it provides enough information to put a person on notice of the existence of a security interest in a particular type of property so that further inquiry can be made about the property subject to the security interest. *Heights v. Citizens National Bank*, supra, at 342 A.2d 743.

The *Heights* court then quotes from the second comment to U.C.C. Section 9402 cited above.

In the instant case, the problem for subsequent creditors is whether the notice that was given by Westinghouse's Financing Statement gave third parties notice that it had a security interest in all inventory or only in specific items of inventory financed by Westinghouse.

The description of collateral in a financing statement need not be specific or exact as long as it reasonably identifies the type of property in which a security interest attaches. *Heights v. Citizens National Bank*, supra, 342 A.2d at 743.

In the *Heights* case the financing statement stated that there was a security interest in all present and after acquired accounts receivable, inventory, and the proceeds arising therefrom. The actual words used in the financing statement in *Heights* were:

All accounts receivable and inventory including proceeds both present and future but not limited to proceeds from inventory and receivables both present and future. Ibid.

In the instant case the financing statement does not specify future inventory and therefore this case although giving the Court guidance on the notice issue is not dispositive of the case here.

The Fifth Circuit Court of Appeals was called on to decide an issue under the Uniform Commercial Code as enacted in Mississippi that helps to clarify the issue in this case. The pertinent code provisions are also applicable in Pennsylvania.

Section 9–402(1) provides that the financing statement is sufficient if it "contains a statement indicating the types, or describing the items, of collateral." In the financing statement filed by the bank the collateral covered was described as "all accounts and contracts owned by the Debtor or arising from the sale of inventory or performance." On the security agreement itself the Bank had checked the appropriate boxes to acquire a security interest in inventory as well as contract rights and accounts. Nevertheless, the bank could perfect a security interest only in those types of collateral listed in the financing statement. See *In re Levine*, 6 U.C.C. Reporting Service 238, 240–1, 244 (D.Conn.1969). Neither "Accounts" nor "contracts" (or "contract rights" in U.C.C. terminology) includes inventory. Section 9–106 of the U.C.C. defines "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." The same section of the U.C.C. defined "contract right" as "any right to payment under a contract not yet earned by performance which is not evidenced by an instrument or chattel paper. [The same section of the U.C.C. defines general intangibles as "any personal property (including things in action) other than goods, accounts, contract rights, chattel

paper, documents and instruments.] That neither term includes inventory is apparent from the inclusion of inventory within the general category of "goods" in § 9–109. "Goods" is defined in § 9–105(1)(f) as including all things which are movable at the time the security interest attaches or which are fixtures and excluding "accounts . . . [general intangibles] contract rights and other things in action." In short inventory is tangible collateral while accounts are intangible. See U.C.C. § 9–105 Official comment 3. Thus, when the bank listed the types of collateral on the financing statement, it did not include inventory. A subsequent potential secured party who looked at the financing statement could reasonably have concluded that the Bank was financing accounts receivable and that the inventory was unencumbered. The financing statement would not have alerted him to the need for additional inquiry. *Gulf National Bank v. Franke*, 563 F.2d 766, 66 U.C.C. Reporting Service 1282, 1285–6 (C.A. 5th Cir. 1977). [Bracketed material added]

The language contained in the financing statement before us, however, while referring in the last sentence to accounts, contract rights and general intangibles, is preceded by an extensive listing of tangible goods.

There is no doubt that the final sentence of paragraph 5 of the financing statement is very inartfully drafted and misleading but it does not qualify the previous listing of inventory terms but is in addition to it. Therefore, it is the opinion of this Court that the list of inventory items in the Debtors' possession at the time of the loan is sufficient notice to third parties.

The whole purpose of notice filing would be nullified if a financing statement had to be filed whenever a new transaction took place between a secured party and a debtor. Once a financing statement is on file describing property by type, the entire world is warned not only that the secured party may already have a security interest in property of that type (as did plaintiff in the property originally financed) but that it may later acquire a perfected security interest in property of that type acquired by the debtor in the future. When the debtor does acquire more property of the type referred to in the financing statement already on file, and when a security interest attaches to that property, the perfection is instantaneous and automatic. § 9–303(1). *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 10 U.C.C. Reporting Service 11, 24 (Minn.1972).

See comment number 2 to U.C.C. Section 9402, supra.

Since Westinghouse's financing statement provides an extensive list of inventory items, it is sufficient to have put third parties on notice that Westinghouse could be secured in future inventory as is made clear in the security agreement.

The Debtors cite a line of cases which suggest that if there is a conflict between the financing statement and the security agreement the narrower document will control. This, however, is not dispositive of the issue here, since we have determined that the language of the financing statement is broad enough to put third parties on notice that Westinghouse's security agreement includes after acquired inventory of the Debtors.

An appropriate Order will issue.